733 So.2d 689 (1999)
SUCCESSION OF Joyce Dove Hearn CHAMPION.
Judith Ann Champion Vesper, Executor-Appellant.
No. 98-1615.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1999.
*690 Chris Anthony Verret, Lafayette, for Judith Ann Champion Vesper.
L. Lane Roy, Timothy W. Basden, Lafayette, for Billie Jean Champion Lancaster.
BEFORE: SAUNDERS, WOODARD, and DECUIR, Judges.
WOODARD, Judge.
This is a will contest case. The decedent, Ms. Joyce Dove Hearn Champion, executed a will, leaving specific pecuniary bequests to two of her children and the remainder of her estate to another child, who was also named as the executor. One of her children opened the succession. Ms. Billie Jean Champion Lancaster, who was to receive a pecuniary bequest less than her forced portion, filed an action to recognize her right to her legitime. The executor, Ms. Judith Ann Champion Vesper, filed a motion for summary judgment to enforce the will as written. The trial court ruled in favor of Ms. Lancaster, recognizing her right to her legitime. The executor appeals. We reverse.

FACTS
Ms. Champion died on April 24, 1997. She was survived by her three children, Ms. Lancaster, Ms. Vesper, and Mr. Richard Terry Champion. At the date of her death, each child was more than twenty three years old and none suffered from mental incapacity or physical infirmity.
On April 19, 1991, Ms. Champion executed her last will and testament. She made specific bequests as follows:
ITEM II
To my daughter, BILLIE JEAN CHAMPION LANCASTER, divorced from DOUGLAS LANCASTER, I leave the total sum of Ten Thousand Dollars ($10,000.00).
To my son, RICHARD TERRY CHAMPION, single and never married, I leave the total sum of Ten Thousand Dollars ($10,000.00).
ITEM III
I hereby leave, give and bequeath unto my beloved daughter, JUDITH ANN CHAMPION VESPER, divorced from KENT VESPER, subject to the legacies set forth in Item II., the balance of my entire estate.
Following Ms. Champion's death, on May 9, 1997, Ms. Vesper was appointed testamentary executrix and filed a petition for probate of the statutory testament. Letters testamentary were issued.
On August 9, 1997, Ms. Lancaster filed a Petition to be Recognized as Forced Heir of Decedent and to Annul Probated Testament. On January 28, 1998, Ms. Vesper filed a motion for summary judgment, contending that decedent's intention, as expressed in her will, was to be determined in accordance with the provisions of La. R.S. 9:2501(B)(1)(b). The parties filed briefs, and the matter was submitted for decision.
On May 1, 1998, the trial court ruled in favor of Ms. Lancaster, recognizing her as a forced heir of her mother. In a minute entry, it stated:
After consideration of the matter, the court finds that under LSA-R.S. 9:2501, the testament in the present case must be interpreted in accordance with the law in effect in 1995, which defined forced heirs as all descendants of the first degree. Billie Jean Champion Lancaster, a descendant of the first degree of Joyce Dove Hearn Champion, must therefore be recognized as a forced heir and must receive her forced portion.
The judgment was signed on June 15, 1998. Thereafter, Ms. Vesper, as testamentary executrix of the succession, filed a motion for a devolutive appeal, which the trial court granted.
*691 After the appeal was lodged with this court, the clerk issued an order sua sponte, remanding the case to the trial court so that it could determine whether the partial grant of summary judgment, recognizing Ms. Lancaster as a forced heir, but not terminating the succession proceedings, should be certified as a final judgment. Thereafter, on December 14, 1998, the trial court signed an order, designating the June 15, 1998 judgment as final and immediately appealable pursuant to La.Code Civ.P. art. 1915(B)(1). On December 16, 1998, this order was furnished to this court, and the appeal proceeded.

LAW
Ms. Vesper asserts that the trial court committed legal error in holding that Ms. Lancaster is entitled to her forced portion of the Champion estate.

SUMMARY JUDGMENT
At the outset, we note that appellate courts review summary judgments de novo under the same criteria that governed the trial court's consideration of whether or not summary judgment was appropriate. Schroeder v. Board of Sup'rs, 591 So.2d 342 (La.1991); Soileau v. D & J Tire, Inc., 97-318 (La.App. 3 Cir. 10/8/97); 702 So.2d 818, writ denied, 97-2737 (La.1/16/98); 706 So.2d 979. Pursuant to La.Code Civ.P. art. 966, the summary judgment procedure is favored and shall be applied to secure the just, speedy, and inexpensive determination of every action. Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97); 702 So.2d 323.
Generally, we will not disturb the grant of a summary judgment when the pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). The threshold question in reviewing a trial court's grant of summary judgment is whether a genuine issue of material fact remains. Kumpe v. Louisiana, 97-386 (La.App. 3 Cir. 10/8/97); 701 So.2d 498, writ denied, 98-0050 (La.3/13/98); 712 So.2d 882. Thereafter, we must determine whether reasonable minds could conclude, based on the facts presented, that the mover is entitled to judgment. Id. Thus, summary judgment is appropriate when all relevant facts are brought before the court, the relevant facts are undisputed, and the sole remaining issue relates to the legal conclusion to be drawn from the facts. Id. As the facts are not in dispute, we must address the legal conclusion that the trial court drew from those facts.
On the date of the testator's death, La.R.S. 9:2501(B)(1)(b) provided:
B. If the person dies testate, and the testament is signed before January 1, 1996, then the testator's intent shall be ascertained according to the following rules:
(1) That the testament shall be governed by the law in effect at the time of the testator's death in any of the following instances:
. . . .
(b) When the testament leaves to the forced heir an amount less than the legitime under the law in effect at the time the testament is executed.
Because the decedent died testate and her Last Will and Testament was signed before January 1, 1996, her intent must be ascertained by applying the provisions of the law quoted above.
The date of the decedent's death followed the effective date of the amendment to La. Const. art. XII, § 5, which became effective January 1, 1996. This amendment abolished forced heirship. Thus, the "law in effect at the time of the testator's death" did not require Ms. Champion to make any testamentary provision for Ms. Lancaster. The first condition of the statute is satisfied.
The remaining determination is the "law in effect at the time the testament was signed." If the decedent's will left Ms. *692 Lancaster less than her legitime under "the law in effect on the date the testament was signed," then the final condition of the statute is satisfied and Ms. Champion's intention as expressed in her will is required to be determined by La.R.S. 9:2501(B)(1)(b).
Ms. Vesper contends in this court, as she did below, that the "law in effect at the time the testament was signed" was La. Civ.Code arts. 1493 and 1495 (1981). Under those articles, Ms. Lancaster was a forced heir of Ms. Champion on April 19, 1991, the date of the execution of the will and one-sixth of the decedent's estate was Ms. Lancaster's legitime. As the parties do not dispute that Ms. Champion's will left Ms. Lancaster less than her legitime, the final condition of La.R.S. 9:2501(B)(1)(b) was met, and the statute must be applied in determining Ms. Champion's intent as expressed in her will.
When Ms. Champion executed her will on April 19, 1991, La.Civ.Code art. 1493 stated:
Forced heirs are descendants of the first degree who have not attained the age of twenty-three years, or of any age who, because of mental incapacity or physical infirmity are incapable of taking care of their persons or administering their estates.
This article was the result of Acts 1989, No. 788 and Acts 1990, No. 147. The article sought to legislatively abolish forced heirship. While we have no opinion of the trial court explaining how he reached the result that he did, it appears to us that he only determined "the law in effect at the time the testament was signed" was La.Civ.Code arts. 1493 and 1495, as amended by Acts 1989, No. 788 and Acts 1990, No. 147, and, therefore, no legitime was required in favor of Ms. Lancaster.
However, Acts 1989, No. 788 and Acts 1990, No. 147, were declared unconstitutional by the Louisiana Supreme Court in Succession of Lauga, 624 So.2d 1156 (La. 1993) and Succession of Terry, 624 So.2d 1201 (La.1993). Both decisions were issued on September 10, 1993. Thus, the question becomes what was the legal effect of the declaration of unconstitutionality of La.Civ.Code arts. 1493 and 1495. Were these articles legally effective until September 10, 1993 or did the supreme court's decision render them a legal nullity, requiring the application of the previous articles of the civil code, La.Civ.Code arts. 1493 and 1495 (1981), which they sought to replace? It is in answering this question that the trial court erred. The trial court held that the 1989 and 1990 amendments to the articles were the law in effect at the time the testament was executed. This was contrary to the supreme court's holding in Terry, 624 So.2d 1201. Once the supreme court decided Lauga and Terry, declaring that the 1989-1990 version of article 1493 was unconstitutional and that the prior law applied, this made the prior law, La.Civ.Code arts. 1493 and 1495 (1981) applicable by the trial court. See also, Concerned Business & Property Owners of DeSoto, Inc. v. DeSoto Parish Sch. Bd., 531 So.2d 436 (La.1988). Unconstitutional acts do not have any legal effect and can be given none by a court after such a declaration by the supreme court, which is what apparently happened in this case.
As the provisions of La.Civ.Code arts. 1493 and 1495 (1981) were in effect on April 19, 1991, the date Ms. Champion signed her will, Ms. Lancaster was both a forced heir and entitled to her legitime under the law on that date. Subsequently, following the adoption of La. Const. art. XII, § 5, amendments to La.Civ.Code arts. 1493 and 1495, as well as provisions of La.R.S. 9:2501, became effective on January 1, 1996. These laws allowed Ms. Champion to restrict Ms. Lancaster's inheritance to a pecuniary legacy less than the amount of her legitime, as Ms. Champion died after these laws became effective, on April 24, 1997. Thus, the law in effect on the date of Ms. Champion's death *693 permitted her to give to Ms. Lancaster exactly what she did.
Accordingly, we reverse.

CONCLUSION
The trial court erred in holding that Ms. Lancaster was entitled to her legitime under her mother's will. Ms. Lancaster is entitled, solely, to the pecuniary bequest provided for in the will. The trial court's decision is reversed. The appellee is cast with the costs of this appeal.
REVERSED.