623 So.2d 96 (1993)
SUCCESSION OF Neal Victor LAWRENCE.
No. 92 CA 1272.
Court of Appeal of Louisiana, First Circuit.
July 2, 1993.
*97 Sondra Arlt Cheek, Bogalusa, for Crain.
Raymond J. Brandt, Metairie, for Lawrence.
Before CARTER, LeBLANC and PITCHER, JJ.
PITCHER, Judge.
Lorell Ingram Crain ("Ms. Crain"), testamentary executrix of the estate of Neal Victor Lawrence ("decedent"), suspensively appeals from a trial court's judgment granting a motion for summary judgment, which recognized appellee, Neal Allen Lawrence ("Lawrence"), as a forced heir of the decedent. We affirm.

FACTS
Decedent died on February 23, 1991, leaving a statutory testament that was executed on April 2, 1990. In the testament, he named Ms. Crain as testamentary executrix and sole legatee. The testament stated in part, "I have been married twice, first to Mildred Podriznick from whom I was divorced in Shreveport, Louisiana in 1952, and second to Mildred Diggle from whom I was divorced in Shreveport, Louisiana in 1958. Of these marriages no children were born. I have no children whatsoever...." On March 21, 1991, Ms. Crain entered the testament for probate and was confirmed as testamentary executrix on the same day.
On May 3, 1991, Lawrence intervened in the succession proceeding by filing a petition to be recognized as an heir of decedent. Lawrence alleged in his petition that he was the legal and lawful heir of the decedent, and as such, he was entitled to be recognized as decedent's lawful and forced heir. Lawrence also alleged that he was entitled to his legal and lawful portion of the decedent's estate. The trial court, on September 3, 1991, pursuant to a joint stipulation, granted judgment recognizing appellee as the son of decedent and ordered appellant to file into the record an amended Affidavit of Death, Heirship and Domicile.
On March 18, 1992, Lawrence filed a motion for summary judgment, seeking to be recognized as decedent's forced heir. He alleged that there were no genuine issues of material fact and that, pursuant to the provisions of LSA-R.S. 9:2501, he was entitled to judgment as a matter of law. After a hearing, the trial court granted the motion for summary judgment, stating in his oral reasons for judgment that the decedent's will was made prior to the amendment of LSA-C.C. art. 1493 and that, in order to disinherit, the intent of the testator would have to be expressly stated. He further stated that he did not believe that an intent to disinherit had been expressly stated in the decedent's will. This suspensive appeal followed.
Appellant has set forth the following assignments of error for our review:
1. The trial court is in error in holding that LSA-C.C. Art. 1493, as amended by *98 Acts of 1990, No. 147 requires an express intention to disinherit.
2. The trial court is in error in finding no genuine issue of fact existed and by the granting of a Motion for Summary Judgment.

ASSIGNMENT OF ERROR NUMBER ONE
On appeal, Ms. Crain contends that LSA-C.C. art. 1493 is the threshold article for consideration, and under this article, Lawrence is not a forced heir. She argues that, because LSA-C.C. art. 1493 is dispositive of the issue of forced heirship in this case, decedent was not obliged to expressly disinherit Lawrence.
LSA-C.C. art. 1493, as amended by Act 147 of the 1990 Regular Session of the Legislature, sets out the new forced heirship law in Louisiana. The act became effective as of July 1, 1990, and provides:
Forced heirs are descendants of the first degree who have not attained the age of twenty-three years, or of any age who, because of mental incapacity or physical infirmity, are incapable of taking care of their persons or administering their estates.
For purposes of forced heirship, representation of a descendant of the first degree who predeceased the donor is permitted if that descendant would not have attained the age of twenty-three years at the donor's death.
LSA-R.S. 9:2501, also as amended by Act 147 of the 1990 Regular Session of the Legislature, serves as a transitional statute for interpreting testaments that were executed prior to July 1, 1990, when the testator dies after June 30, 1990. This statute states:
A. The provisions of Act No. 147 of the 1990 Regular Session shall become effective on July 1, 1990 and shall apply to the successions of all persons who die after June 30, 1990.
B. If the person dies testate, and the testament is executed before July 1, 1990, then the testator's intent shall be ascertained according to the following rules:
(1) That the testament shall be governed by the law in effect at the time of the testator's death in the following instances:
(a) When the testament manifests an intent to disinherit a forced heir or to restrict a forced heir to the legitime in effect at the time of the testator's death;
(b) When the testament leaves to the forced heir an amount less than the legitime in effect at the time the testament is executed; or
(c) When the testament omits a forced heir and the language of the testament indicates an intent to restrict the forced heir to an amount less than the legitime in effect at the time the testament is executed.
(2) That in all other instances the testament shall be governed by the law in effect on June 30, 1990.

(3) That the term forced heir, as used above, shall mean a forced heir at the time the testament is executed. (Emphasis added).
Under LSA-R.S. 9:2501B(1), the new forced heirship law applies if a testament possesses the characteristics of subparagraphs (a), (b), or (c). This is not the case before us. Subparagraphs (a) and (b) are clearly inapplicable to decedent's testament, in that it does not manifest an intent to disinherit Lawrence or to restrict his legitime; and it does not leave him an amount less than his legitime. Because Lawrence's name is omitted from the testament, it would appear that subparagraph (c) would be applicable under this provision. However, subparagraph (c) uses "and" in the conjunctive and requires, in addition to the omission of a forced heir, language in the testament that indicates an intent to restrict the forced heir to an amount less than the legitime in effect at the time the testament is executed. The second part of (c) is not present in this case making the entire subparagraph inapplicable. Since none of the characteristics of subparagraphs (a), (b), or (c) of LSA-R.S. 9:2501B(1) are present in decedent's testament, the rules for interpretation of testaments direct us to the law in effect on June 30, 1990, in accordance with LSA-R.S. 9:2501B(2).
*99 The law in effect on June 30, 1990, was that all descendants of the first degree, regardless of age, were considered forced heirs, and, if one descendant survived the decedent, then he or she was entitled to receive one-fourth of the decedent's estate as his or her legitime. However, forced heirs could be deprived of their legitime, or legal portion, under certain circumstances if the testator followed the guidelines for disinherison pursuant to LSA-C.C. arts. 1617 et seq. Specifically, LSA-C.C. art. 1619 states that the disinherison must be made by name and expressly, and for a just cause, other-wise, it is null. The just causes must be expressly recognized by law, as enumerated in LSA-C.C. art. 1621.[1]
The language of decedent's testament, stating that he had no children whatsoever, does not negate the fact that Lawrence was the son and forced heir of the decedent, nor does it imply an intent to disinherit. Furthermore, the absence of a forced heir's name in a testamentary disposition is not viewed as the disinherison of a forced heir. See Succession of Manuel, 551 So.2d 853, 855 (La.App. 3rd Cir.1989), writ denied, 556 So.2d 1263 (La.1990). Courts have strictly construed the provisions regarding disinherison and have only allowed for such where decedent has formally, expressly and for just cause disinherited an heir by name. See Succession of Vidrine, 562 So.2d 52 (La.App. 3rd Cir.1990); Ambrose Succession v. Ambrose, 548 So.2d 37 (La.App. 2nd Cir.1989).
We, therefore, find that the trial judge was correct in his assessment that the decedent's testament was governed by the law in effect on June 30, 1990, and that, under that law, Lawrence was a forced heir. Furthermore, he was also correct that the law required an express intent to disinherit a forced heir, and that no such express manifestation was present in the instant case. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
Appellant contends, in her second assignment of error, that the trial court erred in granting appellee's motion for summary judgment. She argues that summary judgment is not suitable for disposition of cases requiring a judicial determination of subjective facts such as motive and intent and cites as her authority, Ouachita National Bank in Monroe v. Gulf State Land & Development, Inc. 579 So.2d 1115 (La.App. 2nd Cir.), writ denied, 587 So.2d 695 (La.1991). She claims that, until intent can be established, there can be no judgment as a matter of law.

SUMMARY JUDGMENT
Generally, a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; McKinney v. South Central Bell Telephone Company, 590 So.2d 1220, 1221 (La.App. 1st Cir.1991), writ denied, 592 So.2d 1302 (La.1992); Kerwin v. Nu-Way Construction Service, Inc., 451 So.2d 1193, 1194 (La.App. 5th Cir.), writ denied, 457 So.2d 11 (La.1984); Landry v. Brandy, 389 So.2d 93, 95 (La.App. 4th Cir.1980). The burden is upon the mover for summary judgment to *100 show that no genuine issues of material fact exist, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law, is summary judgment warranted. Frazier v. Freeman, 481 So.2d 184, 186 (La.App. 1st Cir.1985); Asian International, Ltd. v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 435 So.2d 1058, 1063 (La.App. 1st Cir.1983).
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be determined only in light of the substantive law applicable to the case. Sun Belt Constructors, Division of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir. 1988). The movant for summary judgment has the burden of affirmatively showing the absence of any genuine issues of material fact, and any doubt as to the existence of an issue of material fact is to be resolved against granting the motion. White v. Baker Manor Nursing Home, Inc., 400 So.2d 1168, 1169 (La.App. 1st Cir.), writ denied, 403 So.2d 68 (La.1981).
In the instant case, the only matters presented for consideration by the trial court were whether Lawrence was a forced heir of decedent, and if so, whether, under the terms of the will, he had been legally disinherited. Such issues are matters of law that are to be determined by the trial court under LSA-C.C. art. 1493, LSA-R.S. 9:2501, and the laws of disinherison. The trial judge, guided by these provisions of law, reached the conclusion that Lawrence was a forced heir under the law in effect on June 30, 1990, and that he had not been legally disinherited. The trial Judge did not have to ferret out the intent of the decedent, since decedent's will did not comport with the laws governing disinherison as noted in our discussion of assignment of error number one.
Accordingly, this assignment of error is without merit.

CONCLUSION
We, therefore, find that the trial court did not err in granting summary judgment, in that there were no genuine issues of material fact, and that Lawrence was a forced heir as a matter of law. Appellant, Lorell Ingram Crain, is cast for all costs of these proceedings.
AFFIRMED.
CARTER, J., concurs in the result.
NOTES
[1] These causes are, to wit: (1) If the child has raised his or her hand to strike the parent, of if he or she has actually struck the parent; but a mere threat is not sufficient. (2) If the child has been guilty, towards a parent, of cruelty, of a crime or grievous injury. (3) If the child has attempted to take the life of either parent. (4) If the child has accused a parent of any capital crime, except, however, that of high treason. (5) If the child has refused sustenance to a parent, having means to afford it. (6) If the child has neglected to take care of a parent become insane. (7) If the child refused to ransom them, when detained in captivity. (8) If the child used any act of violence or coercion to hinder a parent from making a will. (9) If the child has refused to become security for a parent, having the means, in order to take him out of prison. (10) If the son or daughter, being a minor, marries without the consent of his or her parents. (11) If the child has been convicted of a felony for which the law provides that the punishment could be life imprisonment or death. (12) If the child has known how to contact the parent, but has failed without just cause to communicate with the parent for a period of two years after attaining the age of majority, except when the child is on active duty in any of the military forces of the United States.