756 So.2d 1122 (2000)
SUCCESSION OF Joseph Page BOYTER.
No. 99-C-0761.
Supreme Court of Louisiana.
January 7, 2000.
Rehearing Denied February 18, 2000.
*1123 James Patrick Bodenheimer, Bodenheimer, Jones & Szwak, Shreveport, Counsel for Applicant.
David Andrew Barlow, Kay Cowden Medlin, Barlow & Hardtner, Shreveport, Counsel for Respondent.
David Andrew Barlow, Kay Cowden Medlin, Shreveport, Counsel for Robert Scott Sorensen, Mary Ann DiFilippo Naylor, Cecille Thompson, Noel Taylor Sorensen, Steven Mark Sorensen, Amicus Curiae.
Alton E. Bayard, III, Baton Rouge, Gordon Neal Blackman, Jr., Pike Hall, Jr., J. Edgerton Pierson, Jr., Shreveport, Amy Michelle Perkins, Counsel for Juliet Amelia Williamson, Elisabeth Lloyd Anthony, Barry Ashton R. Naylor, Amicus Curiae.
KIMBALL, Justice.[*]
We granted certiorari to determine the proper interpretation and application of La. R.S. 9:2501 (1996). After examining the clear language of the statute, the legislature's purpose in enacting the statute, and the policies underlying successions law, we hold that La. R.S. 9:2501 is a mandatory statute that applies to all successions in which a person executed a will before January 1, 1996 and died after December 31, 1995 (but before July 15, 1997). We further hold that Mr. Boyter's will does not satisfy any of the requirements set out in subsections (a), (b), and (c) of the statute inasmuch as each exception requires that there be actual verbiage in the testament indicating an intent to deprive the forced heir of his right of reduction. Finally, we find that the plaintiffs were forced heirs under the law in effect on December 31, 1995. We therefore find that the court of appeal erred in not applying La.R.S. 9:2501 (1996) to Mr. Boyter's succession, reverse its judgment, and remand this case to the trial court for further proceedings consistent with this opinion.

Legal Background
The legislature enacted the statute at issue, La. R.S. 9:2501 (1996), to aid in the transition between the time-honored concept that all children were forced heirs unless they were expressly disinherited for just cause by their parents and the new law that provided forced heirship status only to children 23 years of age or younger. Because the Louisiana successions law has been in a state of flux during the last eight years, a proper understanding of the issues faced by this Court in interpreting and applying La. R.S. 9:2501 (1996) in this case must begin with the history of the changes to forced heirship in Louisiana.
In 1989 and 1990, the legislature enacted Acts 788 and 147, respectively, in an attempt to eliminate forced heirship for children over the age of 23. In Act 147 the legislature enacted a transitional statute to provide rules by which a testator's intent could be ascertained when he died after the new law became effective, but his testament was executed before the changes. That statute read as follows:
A. The provisions of Act No. 147 of the 1990 Regular Session of the Legislature *1124 shall become effective on July 1, 1990, and shall apply to the successions of all persons who die after June 30, 1990.
B. If the person dies testate, and the testament is executed before July 1, 1990, then the testator's intent shall be ascertained according to the following rules:
1. That the testament shall be governed by the law in effect at the time of the testator's death in the following instances:
a) when the testament manifests an intent to disinherit a forced heir or to restrict a forced heir to the legitime in effect at the time of the testator's death;
b) when the testament leaves to a forced heir an amount less than the legitime in effect at the time the testament is executed; or
c) when the testament omits a forced heir and the language of the testament indicates an intent to restrict the forced heir to an amount less than the legitime in effect at the time the testament is executed.
2. That in all other instances, the testament shall be governed by the law in effect on June 30, 1990.
3. That the term forced heir, as used above, shall mean a forced heir at the time the testament is executed.
In 1993, the First Circuit Court of Appeal was called upon to interpret and apply this statute, La. R.S. 9:2501 (1990), in Succession of Lawrence, 623 So.2d 96 (La. App.1 Cir.1993). In that case, the testator executed a statutory testament on April 2, 1990, in which he said that he "had no children whatsoever," and left the estate to a friend. After the testament was written, the legislature amended La. C.C. art. 1493 by Act 147 of 1990 (effective July 1, 1990) to reflect its decision to abolish forced heirship law in Louisiana. The testator died on February 23, 1991. In order to resolve this issue, the court turned to La. R.S. 9:2501(1990) and held that the question presented was whether the new law, which abolished forced heirship for children over the age of 23, could be applied in this situation. It noted that under La. R.S. 9:2501(B)(1), the new forced heirship law applied if a testament possessed the characteristics set out in subsections (a), (b), or (c). It found that neither (a) nor (b) were implicated by the facts. It also found that (c) required more than the simple omission of a forced heir. It held that in order for the new law relative to forced heirship to apply, the testament must include language that indicates an intent to restrict the forced heir to an amount less than the legitime in effect at the time the testament was executed. The Lawrence court noted that courts have strictly construed the provisions regarding disinherison and have only allowed for such where the decedent formally, expressly, and for just cause disinherited an heir by name. It stated the absence of a forced heir's name in a testamentary disposition was not viewed as the disinherison of a forced heir, nor did it negate the fact that the plaintiff was the decedent's son and forced heir.[1] Thus, because (a), (b), and (c) were not applicable, the first circuit held that *1125 the law as it applied before the attempted changes to forced heirship controlled and recognized the testator's adult son as a forced heir.
After the First Circuit Court of Appeal's decision in Succession of Lawrence, the Louisiana Supreme Court declared all of Act 147 of 1990 unconstitutional in Succession of Lauga, 624 So.2d 1156 (La.1993), and Succession of Terry, 624 So.2d 1201 (La.1993). In response to these decisions, the legislature proposed an amendment in 1995 to Article XII, Sect. 5 of the Louisiana Constitution that would abolish forced heirship with exceptions for children who were age 23 or younger or permanently disabled when the testator died. The legislature then adopted Act 1180 during the 1995 legislative session, which would be used to implement the constitutional amendment if the voting citizens of Louisiana approved it. Act 1180 of 1995 used virtually the same language as Act 147 of 1990, including the 1990 version of La. R.S. 9:2501. The people of Louisiana approved the constitutional amendment on October 21, 1995. By law the amendment became effective on November 23, 1995. Act 1180 of 1995 became effective on January 1, 1996 by its own terms.
The legislature amended and re-enacted Act 1180 of 1995 during the First Extraordinary Session of 1996 with no substantive changes to La. R.S. 9:2501. Subsequently, Act 1180 was replaced by Act 77 of the 1996 First Extraordinary Session. Effective June 18, 1996, Act 77 added "under the law" after the word "legitime" to La. R.S. 9:2501.[2]
Thus, at all times relevant to the instant case, La. R.S. 9:2501 (1996) read:
A. The provisions of Act. No. 1180 of the 1995 Regular Session as provided therein became effective on January 1, 1996, and shall apply to the successions of all persons who die after December 31, 1995.
B. If the person dies testate, and the testament is executed before January 1, 1996, then the testator's intent shall be ascertained according to the following rules:
(1) That the testament shall be governed by the law in effect at the time of the testator's death in any of the following instances:
(a) When the testament manifests an intent to disinherit a forced heir or to restrict a forced heir to the legitime under the law in effect at the time of the testator's death.
(b) When the testament leaves to the forced heir an amount less than the legitime under the law in effect at the time the testament is executed.
(c) When the testament omits a forced heir and the language of the testament indicates an intent to restrict the forced heir to an amount less than the legitime under the law in effect at the time the testament is executed.
(2) That in all other instances the testament shall be governed by the law in effect on December 31, 1995.
(3) That the term forced heirs, as used above, shall mean a forced heir at the time the testament is executed.

Facts
With this background in mind, we turn to the facts underlying the present case. Four children were born to Joseph Page Boyter during his second marriage: Frances Darlene Boyter Wells (Frances); Michael Page Boyter (Michael); Jerry Wayne Boyter (Jerry); and James Leslie Boyter (James). Each of his four children survived Mr. Boyter.
*1126 Mr. Boyter executed his last will and testament on December 30, 1991, and died on January 28, 1997. His testament contained specific bequests of his automobile, family home, and the land on which the home was situated to James. He bequeathed the remainder of his property, constituting his residuary estate, to James and Jerry (defendants). Frances and Michael (plaintiffs) received nothing from the estate and were not mentioned in the testament.
After Mr. Boyter's death, the plaintiffs filed a Petition to Reduce Donation Mortis Causa to Disposable Portion, to Collate Donations Inter Vivos and Donations Mortis Causa, and to be Recognized as Owners of a One-Fourth Interest Each of the Real and Fictitious Mass of the Estate of Joseph Page Boyter. They prayed for a judgment that recognized them as forced heirs and placed them in possession of a one-fourth (¼) interest each of the real and fictitious mass of Mr. Boyter's estate after the reduction and collation actions. See La. C.C. art. 1502 et seq. and La. C.C. art. 1227. The plaintiffs argued that La. R.S. 9:2501 (1996) mandated that the provisions of the will be governed by the law in effect on December 31, 1995, under which they were considered forced heirs. The plaintiffs asserted that the dispositions in Mr. Boyter's will exceeded the disposable portion, which was one-half of his estate, pursuant to La. C.C. art.1495. The other half of the estate constituted the forced portion, to which the plaintiffs were entitled to share.
The defendants filed a Peremptory Exception of No Right of Action and No Cause of Action. They argued that the plaintiffs had no right of action because they were not forced heirs under the applicable law and had no cause of action upon which relief could be granted because the law in effect when Mr. Boyter died did not treat adult children as forced heirs. Further, under La. C.C. art. 1235 the children could not demand collation because they were not forced heirs.
The defendants pointed out that Mr. Boyter executed his will after the first legislative attempt to redefine forced heirs, but before this Court found the attempt unconstitutional. At that time, they argued, Mr. Boyter must have believed that he was no longer required to leave a portion of his estate to his children. They concluded Mr. Boyter clearly intended to be governed by the law abolishing forced heirship and that the law in effect at the time of Mr. Boyter's death applied to the will.
The defendants further argued that the plaintiffs were not forced heirs even if the court applied the law in effect on December 31, 1995. Louisiana voters passed the constitutional amendment abolishing forced heirship on October 21, 1995. The newly adopted constitutional amendment became effective on November 23, 1995, which was twenty (20) full days after the promulgation of the Amendment's adoption. La. Atty. General Op. No. 95-511, 1995 WL 817959 (La.A.G.). Therefore, they argued that the law in effect on December 31, 1995, was the constitutional amendment abolishing forced heirship without any exceptions. Thus, even if this Court applies the law in effect on December 31, 1995, they asserted that plaintiffs could not be forced heirs under that law.
On September 15, 1997, the trial court held a hearing on the peremptory exceptions filed by the defendants at which certain experts in the field of successions law and a former Louisiana state senator testified. After the hearing, the trial court sustained the defendants' peremptory exceptions of no cause or right of action and dismissed the plaintiffs' action. The trial court found that the testament evidenced Mr. Boyter's intent that the law in effect at the time of his death govern his succession. Notwithstanding the express provisions of La. R.S. 9:2501, the court concluded that Mr. Boyter wanted his testament to be governed by the 1995 Amendment of La. Const. art. XII, Sect. 5,[3] which abolished *1127 forced heirship with certain exceptions, and Article 1493 of the La. Civ.Code (as amended by Act 1180 of 1995 and Act 77 of the First Extraordinary Session of 1996), which defined forced heirship.[4] The trial court reached this conclusion by inferring the testamentary intent by virtue of the inclusion of defendants in the will and the exclusion of the plaintiffs. Under the applicable substantive law, which is the law in effect at the time of Mr. Boyter's death, the trial court found that the plaintiffs were not forced heirs, had no right to demand collation, reduction or recognition in connection with Mr. Boyter's succession, had no right of action and failed to state a claim or a cause of action upon which relief could be granted. It dismissed plaintiffs' claim pursuant to Article 934 of the La. Code of Civil Procedure.
In affirming the trial court's decision, the court of appeal refused to apply La. R.S. 9:2501(B). The second circuit concluded that subsection B of Section 9:2501 is simply a transitional provision enacted to aid in the interpretation of testaments. As such, La. R.S. 9:2501(B) was inapplicable for the construction and interpretation of Mr. Boyter's testament because the language of his testament was clear and did not indicate a donative intent as to the excluded children.[5]
Because this case presents a significant unresolved issue of law, this Court granted certiorari to determine the proper application of La. R.S. 9:2501(B) (1996). 99-C-0761 (La.4/30/99), 741 So.2d 2.

Discussion

Conflicting Decisions
Since the enactment of the new law on forced heirship, there has evolved in the circuit courts of this state a difference of opinion on the proper interpretation to be given La. R.S. 9:2501 (1996). For example, in Succession of Price, 96-1330 (La. App. 3 Cir. 3/5/97), 692 So.2d 1152, the third circuit applied the provisions of La. R.S. 9:2501(B) and concluded that the new law abolishing forced heirship applied to the testator's succession. The testator's will, which was written on August 4, 1990, provided that "if my grandchildren ... have attained the age of 23 at the time of my death, then I will and bequeath all the property of which I die possessed to my son ... and daughter ..., to share and share alike." She further provided that "should provisions of La. C.C. article 1495, as amended, be declared unconstitutional or invalid, then in that event, I direct that the allowed disposable portion be given to [my son and daughter], share and share alike." The trial court construed the testator's donative intent after applying the *1128 factors in La. R.S. 9:2501(B)(1)(a). It found that the testament manifested an intent to disinherit the grandchildren. As such, it found that the testator's grandchildren were not forced heirs and were not entitled to inherit anything from their grandmother. Similarly, in Succession of Joyce Dove Hearn Champion, 98-1615 (La.App. 3 Cir. 4/21/99), 733 So.2d 689, the third circuit applied La. R.S. 9:2501(B)(1)(b) and held the law in effect at the time of the testator's death applied to exclude her adult children as forced heirs. In applying subsection (B)(1)(b), the court did not discuss whether its application was mandatory, but simply stated, "because the decedent died testate and her Last Will and Testament was signed before January 1, 1996, her intent must be ascertained by applying the provisions of the law quoted above." The Fifth Circuit Court of Appeal applied La. R.S. 9:2501 (1996) in Succession of Martinez, 98-962 (La.App. 5 Cir. 2/10/99), 729 So.2d 22, and held that the son of the testator, who bequeathed everything to her husband, was not a forced heir. The testament provided that only in the case of a common calamity would a portion of her estate devolve to her four children and stepson. The court found that the testament showed the testator's intent to deprive her children of their legitime as long as their father was alive. Therefore, the court applied the law in effect at the time of the testator's death as mandated by La. R.S. 9:2501(B)(1)(b).
In contradiction with the cases cited above, the Second Circuit Court of Appeal ruled that it was not necessary to use La. R.S. 9:2501(B) as an aid in the construction and interpretation of Mr. Boyter's testament. In essence, the appellate court stated that "before an interpretation of a testament becomes necessary at all so as to allow a court to consider other extrinsic circumstances or to resort to a statutory presumptive rule for construction, the language of the testament must be susceptible of different meanings or be ambiguous. The words of the testament, like the language of a statute or a contract, should be applied as written with no further interpretation or search for intent if a single and clear intent is present." The majority found that Section 2501(B) was applicable only if the language of the will became susceptible of two reasonable constructions because of the change in the law of forced heirship following confection of the will. Specifically, the court found that the language of Mr. Boyter's will was clear and unambiguous and expressed only one intent. It concluded that Mr. Boyter's intent was clearly expressed and that Section 2501(B)'s transitional interpretive provisions could not be applied under the pretext of pursuing his intent. Thus, the second circuit's refusal in this case to apply La. R.S. 9:2501 created a split in the circuits regarding whether La. R.S. 9:2501 is a mandatory provision or whether it is to be used only in the absence of a clear testamentary intent.

Statutory Construction
In resolving the issue of whether La. R.S. 9:2501 (1996) must be applied to the instant situation, we must keep certain principles of judicial interpretation of statutes in mind. The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the legislature to enact the law. Fontenot v. Chevron U.S.A., Inc., 95-1425 (La.7/2/96), 676 So.2d 557. The rules of statutory construction are designed to ascertain and enforce the intent of legislature. Stogner v. Stogner, 98-3044 (La.7/7/99), 739 So.2d 762; State v. Piazza, 596 So.2d 817 (La. 1992).
Legislation is the solemn expression of legislative will and, therefore, the interpretation of legislation is primarily the search for the legislative intent. Cat's Meow, Inc. v. City of New Orleans Through Dept. of Fin., 98-0601 (La.10/20/98), 720 So.2d 1186; Hutchinson v. Patel, 93-2156 (La.5/23/94), 637 So.2d 415. When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as *1129 written and no further interpretation may be made in search of legislative intent. La. C.C. art. 9; Cat's Meow, 98-0601 at p. 15, 720 So.2d at 1198.
The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting it. Stogner, 98-3044 at p. 2, 739 So.2d at 762. The statute must therefore be applied and interpreted in a manner which is consistent with logic and the presumed fair purpose and intention of the legislature in passing it. Rodriguez v. Louisiana Med. Mut. Ins. Co., 618 So.2d 390 (La.1993). This is because the rules of statutory construction require that the general intent and purpose of the legislature in enacting the law must, if possible, be given effect. Radiofone, Inc. v. City of New Orleans, 93-0962 (La.1/14/94), 630 So.2d 694; Backhus v. Transit Cas. Co., 549 So.2d 283 (La.1989); Truscon Steel Co. v. B. & T. Const. Co., 170 La. 1083, 129 So. 644 (1930). Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. First Nat'l Bank of Boston v. Beckwith Mach. Co., 94-2065 (La.2/20/95), 650 So.2d 1148; Matter of Am. Waste and Pollution Control Co., 93-3163 (La.9/15/94), 642 So.2d 1258; CHF Finance Co., Inc. v. Jochum, 241 La. 155, 127 So.2d 534 (1961). It is presumed that the intention of the legislative branch is to achieve a consistent body of law. Stogner, supra.
The starting point for the interpretation of any statute is the language of the statute itself. Cat's Meow, supra; Touchard v. Williams, 617 So.2d 885 (La.1993). This case, however, requires us to interpret the scope of application of La. R.S. 9:2501 (1996). Therefore, in reaching a conclusion, we must not only analyze the language of the statute, but must also ascertain the legislative intent with respect to its applicability. See generally Sanders v. Department of Health & Human Resources, 388 So.2d 768 (La.1980) (explaining that whether procedural requirements such as those set forth in Civil Service Rule 12.3(a)(3) are mandatory cannot be determined by a mere literal reading of the provision, but can only be determined by ascertaining the intent of its drafters). It is important to understand that we are not concerned at this point with Mr. Boyter's intent when he wrote his will. Rather, we are interpreting the statute to determine whether it applies to Mr. Boyter's succession.
On its face, Section A of the statute purports to apply to the successions of all persons who die after December 31, 1995: "The provisions of Act No. 1180 of the 1995 Regular Session shall become effective on January 1, 1996, and shall apply to the successions of all persons who die after December 31, 1995." The statute goes on to provide that if a person dies testate and his testament was executed before January 1, 1996, then his intent shall be ascertained according to specified provisions. La. R.S. 9:2501(B) (1996). The first of those provisions specifies that the testament shall be governed by the law in effect at the time of the testator's death if any of three conditions are met. La. R.S. 9:2501(B)(1) (1996). If none of the three conditions are met, then the statute provides that "in all other instances the testament shall be governed by the law in effect on December 31, 1995." La. R.S. 9:2501(B)(2) (1996).
The statute repeatedly uses the mandatory term "shall," which for purposes of statutory construction, denotes a mandatory duty. Jurisich v. Jenkins, 99-0076 (10/19/99), 749 So.2d 597; Ray v. South Cent. Bell Tel. Co., 315 So.2d 759 (La.1975). Therefore, Section B mandates that courts ascertain the testator's intent according to the rules provided in La. R.S. 9:2501 (1996). This conclusion is patently clear when the text of the statute is considered as a whole. It is applicable to the successions of all persons who die after *1130 December 31, 1995; if the testament was executed before January 1, 1996, then the testator's intent shall be ascertained according to the provisions contained in La. R.S. 9:2501(B); the testament shall be governed by the law in effect at the time of the testator's death if subsections (a), (b), or (c) apply; if these subsections do not apply, then in all other instances the testament shall be governed by the law in effect on December 31, 1995.
The court of appeal's conclusion that the statute is only to be applied as an aid in the interpretation of testaments where the testator's intent is not otherwise clear is not supported by the language of the statute. There is nothing on the face of the statute to indicate it is to be used only in cases in which the intent of the testator cannot be ascertained by other means. In fact, the contrary is true. The specificity of the statute combined with the use of inclusive terms leads us to conclude it is to be applied to the instant case. This conclusion is further bolstered by a consideration of the purpose of the statute and the policies underlying the law of successions.
The statute at issue, La. R.S. 9:2501 (1996), is a transitional provision which, as a temporary provision, is to be construed in a manner so as to carry out the general design of the Act of which it is a part. Employees' Retirement Sys. of the State of Hawaii v. Ho, 44 Haw. 154, 352 P.2d 861 (1960). This particular transitional provision was enacted to bring certainty and consistency to a confusing time in this area of the law wherein Louisiana moved from a legal regime under which all children were forced heirs, unless they were expressly disinherited for just cause by their parents, to one in which forced heirship status was only provided for in limited circumstances. See Kathryn Venturatos Lorio, Forced Heirship: The Citadel Has FallenOr Has It?, 44 La. Bar J. 16 (June 1996). The legislature apparently realized that the recommended changes to the forced heirship laws would lead to confusion among people who wrote testaments before the new law came into effect and among those who would later have to interpret those testaments. As it had done in many other instances where the law changed significantly, the legislature enacted a transitional provision, La. R.S. 9:2501 (1996), as part of the enabling legislation that essentially revamped Louisiana's forced heirship laws to deal specifically with the issue of whether or not a testator intended the new forced heirship laws to apply to his succession. Interpreting the statute to apply in some circumstances, but not in all, contravenes the legislature's purpose in enacting the transitional provision to bring some certainty to this area of the law.
The statute provides for one of two mutually exclusive outcomes when a person whose testament was executed before January 1, 1996 dies after December 31, 1995. When the transitional provision is applied, either: (1) the testament complies with the requirements of (B)(1), in which case the law in effect at the time of the testator's death "shall" govern the testament, or (2) the testament does not comply with the requirements of (B)(1), in which case the law in effect on December 31, 1995 "shall" govern the testament. The statute allows for no deviation from its terms in order to create a formula that, once applied, gives predictable and consistent results, goals which are especially relevant in successions law because testators have but one chance to make their wishes known.
The mandatory application of La. R.S. 9:2501(1996) to yield one of two mutually exclusive results best fulfills the aim of successions law, which is the establishment of a comprehensive regime that is stable, predictable, and final. See generally In re: Howard Marshall Charitable Remainder Annuity Trust, 97-1718 (La.3/4/98), 709 So.2d 662; Pace v. State Through Louisiana State Employees Retirement Sys., 94-1027 (La.1/17/95), 648 So.2d 1302. Such mandatory application of the transitional provision will promote consistent results regarding its applicability throughout Louisiana's different appellate jurisdictions. *1131 Additionally, the mandatory application of La. R.S. 9:2501 (1996) will allow persons who executed testaments prior to January 1, 1996 to better evaluate whether they need to execute new testaments in order that their final wishes be carried out. Clearly, the mandatory application of the statute comports not only with the specific language of the statute, but also with the legislature's purpose in enacting it and the policies underlying successions law.
Finally, to read the statute as a mere aid in the interpretation of testaments when the testator's intent cannot otherwise be ascertained impermissibly renders subsections (a) and (c) meaningless and superfluous. If the testament meets any of the requirements in subsections (a), (b), or (c) of La. R.S. 9:2501(B)(1) (1996), then the law in effect at the time of the testator's death applies. The provisions of subsections (a), (b), and (c) are very specific and require that there be actual verbiage in the testament indicating an intent to cut off the forced heir's right of reduction. Were we to conclude that La. R.S. 9:2501 (1996) applies only when the intent of the testator cannot otherwise be ascertained, then subsections (a), (b), and (c) would never be met because, if the intent is so clear as to satisfy these subsections, courts would not need to turn to the statute for guidance in interpreting the testator's intent.
For all the above reasons, we hold that the language of La. R.S. 9:2501 (1996), along with the legislature's purpose in enacting the statute and the policies underlying successions law, indicates the legislature intended that it be applied to the successions of all persons who die after December 31, 1995, leaving a testament that was executed before January 1, 1996.

Application of Statute
Having concluded that La. R.S. 9:2501 (1996) applies in the instant case, we now turn to its application to the facts at hand. The clear wording of La. R.S. 9:2501(B) requires that there be actual verbiage in the testament indicating an intent to cut off the forced heir's right of reduction under La. C.C. art. 1503, et seq. Accordingly, we find that each of the three requirements found in La.R.S. 9:2501(B) requires a clear and affirmative action by the testator.
In order for the testament to be governed by the law in effect at the time of the testator's death, La. R.S. 9:2501(B)(1)(a) requires that the testator "manifest an intent to disinherit a forced heir or to restrict the forced heir to his legitime under the law in effect at the time of the testator's death." The term "disinherit," as used in Louisiana before the articles on disinherison were revised by Acts 1997, No. 142, Section 1 (effective July 1, 1999), was a term of art that required more than the omission of a forced heir from a testament. Under La. C.C. arts. 1617 and 1619 (effective until July 1, 1999), forced heirs could be deprived of their legitime and the seizin granted to them by law only for just cause and in the manner prescribed by the Civil Code. To effect a disinherison, the testator had to declare in the will that the forced heir was disinherited and the precise grounds for the disinherison. La. C.C. art. 1619 (effective until July 1, 1999); La. C.C. art. 1618 (effective July 1, 1999) ("A disinherison, to be valid, must be made in one of the forms prescribed for testaments."); La. C.C. art. 1624 (effective until July 1, 1999) ("The testator shall express in the will for what reasons he disinherited his forced heirs or any of them...."); Succession of Fragala, 28,663 (La.App. 2 Cir. 9/27/96), 680 So.2d 1345; Succession of Price, supra.
In this case, Mr. Boyter did not mention the plaintiffs. Clearly, he did not "disinherit" plaintiffs as he did not comply with the codal provisions requiring express disinherison and the reasons therefor. Although subsection (a) does not necessarily require that an attempted disinherison be determined successful under the law, it does contemplate that the testator made an attempt to comply with the statutory requirements for disinherison. The mere omission of a forced heir, therefore, *1132 cannot be considered an attempted disinherison under the Civil Code. Succession of Fragala, supra; see Succession of Manuel, 551 So.2d 853 (La.App. 3 Cir. 1989) (noting that "the testamentary disposition by [the testator] in favor of the children of [his son] cannot be viewed as a disinherison of [the son] because under La.C.C. art. 1619, the disinherison must be made by name and expressly and for one of the just causes specifically enumerated in La.C.C. art. 1621").
Similarly, we cannot say that by omitting any mention of plaintiffs, Mr. Boyter's testament manifested an intent to restrict plaintiffs to their legitimes under the law in effect at the time of his death. We cannot infer or hypothesize what Mr. Boyter intended with respect to plaintiffs. Succession of Montegut, 217 La. 1023, 47 So.2d 898 (1949) ("Our function is to construe this will as written, not to make another will by adding to the controversial provisions the words [ ... ]. We must interpret what the testatrix said, not what we think she meant to say, because after all, that would be the operation of our minds, not hers."); Succession of Blue, 126 So.2d 195 (La.App. 4 Cir.1961) (noting that "the function of the court is to construe the will as written, to interpret what the testatrix said, not what we think she meant to say, and to give effect only to the express and not to the conjectural or probable intention of the testatrix").
As noted previously, a manifestation of intent as contemplated by La. R.S. 9:2501(B)(1)(a) requires some affirmative action by the testator in his testament. In the absence of any such affirmative indication by the testator regarding plaintiffs, we must conclude that Mr. Boyter's testament did not manifest an intent to disinherit a forced heir or to restrict a forced heir to the legitime in effect at the time of the testator's death. Therefore, the situations envisioned by La. R.S. 9:2501(B)(1)(a) are not presented in the instant case.
Subsection (B)(1)(b) applies when the "testament leaves to the forced heir an amount less than the legitime under the law in effect at the time the testament is executed." Here again, the clear language of the statute requires that the testament include some affirmative action to leave the forced heir something less than the legitime under the law in effect at the time the testament was executed. It is only logical to conclude that the notion of the testament itself leaving some amount requires that the testament contain an affirmative statement as to amount. In order for the testament to leave "to the forced heir an amount less than the legitime under the law in effect at the time the testament is executed," it must contain some positive statement relating to the person who would have been a forced heir prior to the effective date of the new law on forced heirship. Thus, the mere omission of plaintiffs does not satisfy the requirement of La. R.S. 9:2501(B)(1)(b).
The third exception, found in subsection (B)(1)(c), contains two requirements: (1) that the testament "omits a forced heir" and (2) that the "language of the testament indicates an intent to restrict the forced heir to an amount less than the legitime under the law in effect at the time the testament is executed." The first requirement is arguably satisfied as Mr. Boyter's testament made no mention of plaintiffs. They may therefore be considered "omitted" as required by subsection (B)(1)(c). The second requirement, however, like that found in subsection (B)(1)(b), contemplates that there be affirmative language in the testament indicating that the forced heir is restricted to an amount less than the legitime under the law in effect at the time the testament was executed. In the absence of such affirmative language, we cannot say that subsection(B)(1)(c) applies.
Because Mr. Boyter's testament merely omitted any mention of plaintiffs and did not contain any affirmative language manifesting any intent as to these children, we hold that La. R.S. 9:2501(B)(1) is inapplicable to the instant situation. This conclusion is further supported by the policies underlying successions law. Interpreting *1133 subsections (a), (b), and (c) to require the testament at issue to contain affirmative language manifesting an intent to cut off a forced heir's right of reduction promotes certainty and stability in this area of successions law. Such an interpretation allows those persons who executed testaments prior to January 1, 1996 to evaluate more effectively whether their wishes will be carried out upon their deaths or whether they need to execute new testaments. Moreover, it allows for a uniform interpretation of testaments, which in turn fosters stability in the law.
Finally, our interpretation is supported by the fact that the mere omission of a forced heir has never been given any effect by our courts. The prior law provided a claim for reduction for all forced heirs regardless of whether they were mentioned in the will or not. La. C.C. art. 1503, et seq. For instance, in Succession of Lauga, 624 So.2d 1156 (La.1993), the testator left his entire estate to only one of his three children. After deciding that the statutes purporting to redefine forced heirship violated the constitution, this Court affirmed the trial court's judgment in favor of the two children Mr. Lauga omitted from his testament. Similarly, in Jordan v. Filmore, 167 La. 725, 120 So. 275 (1929), this Court awarded the plaintiff one-fourth of her mother's estate despite the fact that the testator had executed a will in which she did not make any mention of the plaintiff as a forced heir and left her entire estate to another daughter.[6]
For the above stated reasons, we find that the default provision found in subsection (B)(2) applies and the plaintiffs' rights are governed by the law in effect on December 31, 1995.

Law in Effect on December 31, 1995
The formulaic nature of La. R.S. 9:2501 (1996) demands that the law in effect on December 31, 1995, governs the succession of a person who executed a will before January 1, 1996, and died after December 31, 1995, if the testament does not evidence the testator's intent to deprive a child of his right of reduction. Because this Court applied La. R.S. 9:2501 (1996) to the facts of this case and found Section (B)(2) applicable to Mr. Boyter's succession, we must now necessarily decide what law was in effect on December 31, 1995.
In 1921, the institution of forced heirship received constitutional protection in Louisiana. La. Const. art. IV, Sect. 16 (1921). Article IV, Section 16 of the 1921 Constitution stated that "[n]o law shall be passed abolishing the principle of forced heirship." In 1974, the people of Louisiana voted to replace the former article with Article XII, Section 5, which read "[n]o law shall abolish forced heirship. The determination of forced heirs, the amount of the forced portion, and the grounds for disinherison shall be provided by law. Trusts may be authorized by law, and forced portion may be placed in trust." Then, without amending the constitution, the legislature attempted to severely restrict the definition of forced heirship in Louisiana by amending La. C.C. art. 1493 in 1989 and 1990. The amended version of La. C.C. art. 1493 defined forced heirs as "descendants of the first degree who have not attained the age of twenty-three years, or of any age, who, because of mental incapacity or physical infirmity, are incapable of taking care of their persons or administering their estates." In Succession of Lauga, this Court addressed the constitutionality of the 1989 and 1990 amendments to La. C.C. art. 1493 and held that the article violated Article XII, Section 5 of the Louisiana Constitution "by depriving the plaintiffs of their individual rights, purporting to abolish the constitutional principle of equality of heirship and render forced heirship wholly ineffective." Succession of Lauga, p. 1165-66. The majority concluded that the amended version of *1134 La. C.C. art. 1493 would abolish the core principle or equality of heirship, thereby frustrating each of the purposes of the constitutional provision.
In response to this Court's decision in Succession of Lauga, the legislature passed Act 1321, which proposed a constitutional amendment, during the Regular Session in 1995. The Act provided that the proposed amendment would be submitted to the electors at the gubernatorial primary election held on October 21, 1995. The voters approved the amendments to La. Const. Article XII, Section 5 and the Governor proclaimed the adoption of the amendment on November 2, 1995.[7] By law, the constitutional amendment became effective on November 23, 1995.
Article XII, as amended in 1995, provides that:
(A) The legislature shall provide by law for uniform procedures of successions and for rights of heirs or legatees and for testate and intestate succession. Except as provided in Paragraph B of this Section, forced heirship is abolished in this state.
(B) The legislature shall provide for the classification of descendants, of the first degree, twenty-three years of age or younger as forced heirs. The legislature may also classify as forced heirs descendants of any age who, because of mental incapacity or physical infirmity, are incapable of taking care of their persons or administering their estate. The amount of the forced portion reserved to heirs and the grounds for disinherison shall also be provided by law. Trusts may be authorized by law and the forced portion may be placed in trust.
In anticipation of the passage of the constitutional amendment, the legislature passed, during the same legislative session, legislation that redefined forced heirs and dealt with related issues. Act 1180 of the 1995 Regular Legislative Session. Section 5 of Act 1180 of 1995 specifically provided that the Act's effectiveness was conditioned upon the enactment of the corresponding constitutional amendment. The objective of Act 1180 was to implement both the mandatory and permissive provisions contained in the constitutional amendment in the event the amendment passed.
The transitional provision, La. R.S. 9:2501 (1995), which was part of this implementing legislation, stated that the law in effect on December 31, 1995, the day before the provisions of Act 1180 were to become effective, would apply to cases in which the testament did not meet the requirements of (B)(1). To determine the law in effect on December 31, 1995, we must determine whether the constitutional amendment is self-executing or whether it required the implementing legislation found in Act 1180 of 1995 to become effective before it could itself become effective. If the constitutional amendment is self-executing, then children over age 23 were not considered forced heirs as of November 23, 1995, the effective date of the constitutional amendment. If it is not self-executing, then the law recognizing all children as forced heirs, regardless of age, remained in effect until the provisions in Act 1180 became effective on January 1, 1996.
Defendants urge that the law in effect on December 31, 1995, was that forced heirship was abolished, except in a few instances not relevant to this case. Their argument is based on the assumption that the provisions in the constitutional amendment to Article XII, Section 5, which became effective on November 23, 1995,[8] *1135 were self-executing and that no supplementary or implementing legislation was needed to give it effect. Therefore, the defendants argue that forced heirship was abolished for all children over age 23 on November 23, 1995, without the necessity of the implementing legislation found in Act 1180 of 1995.[9] Conversely, the plaintiffs argue that La. R.S. 9:2501 (1995 and 1996) would be meaningless unless the law in effect on December 31, 1995, is found to protect all children as forced heirs.
In order to determine whether the law in effect on December 31, 1995, recognized children over the age of 23 as forced heirs, we must resolve whether Article XII, Section 5, as amended, is a self-executing provision. Substantively, paragraph (A) of Article XII, Section 5, provides that the legislature shall provide by law for uniform procedures of successions and for the rights of heirs or legatees and for testate and intestate successions. The second sentence of paragraph (A) also provides that "except as provided in Paragraph B of this section, forced heirship is abolished in this state." Importantly, Paragraph B mandates that the legislature classify certain descendants of the first degree as forced heirs, specify the amount of the forced portion reserved to heirs, and provide the grounds for disinherison. The amendment also granted the legislature the power to decide whether to classify as forced heirs descendants of any age who are incapable of taking care of their persons or administering their estates and to authorize trusts, into which the forced portion may be placed.
In Student Gov't Ass'n of Louisiana State Univ. and Agr. and Mechanical College, Main Campus, Baton Rouge v. Board of Sup'rs of Louisiana State Univ. and Agr. and Mechanical College, 262 La. 849, 264 So.2d 916 (1972), this Court stated:
[T]he characterization of a constitutional provision as `self-executing' or not is generally only a conclusion as to whether the constitutional intent is to provide a presently effective rule, by means of which the right given may be enjoyed and protected and the duties imposed by the enforced without supplementary legislation. 1 Cooley's Constitutional Limitations, pp. 165-172 (8th Ed., 1927; Carrington, ed.); 16 C.J.S. `Constitutional Law' ss 48-60; 16 Am.Jur.2d, `Constitutional Law', Sections 93-100.
We applied this principle in Chamberlain v. State Through Dept. of Transp. and Dev., 624 So.2d 874 (La.1993), by parsing each subsection of old Article XII, Section 10.[10] In that case, we determined that Section 10(A) was self-executing because it contained a mandatory provision against sovereign immunity in contract and tort, which established a rule that was effective without an act of the legislature. Id. In contrast, we found that the language and functions of Sections (B) and (C), which allocated power to the legislature employing "permissive, legislative waiver language," demonstrated that the latter sections were not self-executing and thus required the legislature to provide supplemental legislation in order for the rule to be effective. Id. at 882. Thus, *1136 constitutional provisions that are not self-executing allocate power to the legislature and require the legislature to enact supplemental legislation to carry the rule into effect. Jacobs v. City of Bunkie, 98-2510 (La.5/18/99), 737 So.2d 14, reh'g denied.
In Theriot v. Terrebonne Parish Police Jury, 436 So.2d 515 (La.1983), we held that La. Const. art. XII, § 6, which provided, "[n]eiher the state nor any of its political subdivisions shall conduct a lottery. Gambling shall be defined by and suppressed by the legislature," was not self-executing. This conclusion was based on the conclusion that while the provisions expressly prohibit lotteries conducted by the state or its political subdivisions, it "otherwise leaves the control of gambling to the Legislature." Id. at 517. In a more recent case dealing with the constitutionality of La. R.S. 9:2800, we held that a 1995 amendment to La. Const. art. XII, § 10(C) was not self-executing because it used the permissive language "the legislature by law may limit ... the ... liability of the state." Jacobs, supra. There, we stated, "[t]he use of this language and the function of the provision indicates that it does not establish a presently effective rule; rather, the provision empowers the legislature to enact a rule limiting the state's liability. Because the provision does not establish a presently effective limit on the state's liability but allocates the power to enact one `by law' to the legislature, we find the provision not self-executing." Id. at p. 6, 737 So.2d at 14.
Like the provision found not to be self-executing in Theriot, the constitutional provision at issue in this case, Section (A) of Article XII, Section 5, begins with the mandate that the legislature provide uniform procedures for successions and for the rights of heirs or legatees in testate or intestate successions. This portion of the amendment clearly indicates that the legislature has the power to provide procedural laws relative to successions, laws specifying the rights of heirs or legatees, and laws for testate and intestate successions. Section (A) thus empowers the legislature to enact these laws and is not self-executing. The second sentence in Section (A), which provides that forced heirship is abolished in Louisiana, except as provided in Paragraph (B), necessarily must be read in context with Paragraph (B). Paragraph (B) contains several mandates to the legislature to take certain actions relative to classifying forced heirs and to define the forced portion reserved to heirs and the grounds for disinherison. It also contains a permissive grant of power to the legislature providing that it may classify descendants of any age as forced heirs if they are incapable of caring for their persons or administering their estates and authorize the placing of the forced portion into a trust.
Article XII, Section 5 is similar to Section (C) of Article XII, Section 10 prior to its amendment which, in Chamberlain, was found to be a non self-executing provision. In Chamberlain, we found that the language and function of Section (C), which allocated power to the legislature, demonstrated that the section was not self-executing, and thus, required the legislature to provide supplemental legislation in order for the rule to be effective. Similarly, the language in both sections of Article XII, Section 5 require the legislature to provide supplemental legislation relative to forced heirship. The amendment specifically stated that forced heirship was abolished, but only after the legislature took the actions mandated in Section (B). Because these provisions allocate power to the legislature, thereby requiring it to enact supplemental legislation to carry the rule into effect, they are not self-executing. Jacobs, 98-2510 at p. 6, 737 So.2d 14.
Further support for our conclusion that Article XII, Section 5 is not self-executing comes from the legislative and jurisprudential history of forced heirship and the apparent understanding of the voters who approved the constitutional amendment that the law in effect on December 31, 1995, would view all children as forced heirs. Additional support comes from the legislature's decision to specify that the *1137 law in effect on December 31, 1995, which is the day before all the provisions of Act 1180 became effective, would govern the successions of those testators who did not effectively assert their intent to be governed by the law in effect at the time of their death. The legislature obviously believed that the law in effect on December 31, 1995, was that all children were forced heirs. To construe the legislative intent in any other way would render meaningless the transitional statute in La. R.S. 9:2501 because if the law in effect on December 31, 1995, was almost identical to the one in effect when the testator died, adult children would not be considered forced heirs in either circumstance.
As explained above, the 1995 amendment to Article XII, Section 5 must be interpreted to provide that forced heirship was abolished in this state, subject to the condition that the legislature provide for the classification of certain descendants of the first degree as forced heirs. Consequently, the effectiveness of the constitutional amendment, including the provision that states "forced heirship is abolished in this state," was suspended until the legislature provided the supplemental legislation mandated by the constitution, including the classification of forced heirs. We therefore find that the laws defining forced heirs as all children remained intact until the supplemental legislation mandated by the constitutional amendment became effective, which was January 1, 1996. In this case, plaintiffs will be treated as forced heirs because Mr. Boyter's testament did not manifest an intent to deprive his children of their right of reduction.

Remaining Assignments of Error
Because we have resolved this matter in a manner favorable to plaintiffs, we need not address their remaining assignments of error dealing with the trial court's admission of certain testimony during the trial.

Conclusion
The court of appeal erred in not applying La. R.S. 9:2501 (1996) to Mr. Boyter's succession and its judgment is therefore reversed. We find the testament is governed by the law in effect on December 31, 1995. The case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MARCUS and VICTORY, JJ.. dissent and assign reasons.
TRAYLOR, J., dissents for reasons assigned by Justice MARCUS.
MARCUS, Justice, dissenting,
Assuming that La. R.S. 9:2501 applies to the succession in the instant case, I find that in accordance with La. R.S.9:2501(B)(1)(a), Mr. Boyter manifested an intent to disinherit two of his children, Frances and Michael. La. R.S. 9:2501(B)(1)(a) provides in pertinent part that the testament shall be governed by the law in effect at the time of the testator's death (no forced heirship) when the testament "manifests an intent to disinherit a forced heir."
In my view, the manifestation of intent by the testator need not be by actual verbiage. The testator need not effect a disinheritance. Rather, it is only required that he manifest an intent to exclude forced heirs from inheritances under his will. Intent is determined by the circumstances.
At the time that Mr. Boyter made this testament, forced heirship for children over the age of twenty-three had been abolished by the legislature; therefore, there was no reason for him to do anything other than what he did in order to leave two of his children out of his will. Subsequently, when La. R.S. 9:2501 was amended and reenacted in 1995, the statute required only a manifestation of intent to disinherit. Mr. Boyter had four children but his testament left his estate to only two of his children. I consider this to be a clear manifestation of intent to disinherit the two children who were omitted from the testament, particularly in view of the *1138 fact that forced heirship had been abolished at the time he executed his will.
I further find that under La. R.S. 9:2501(B)(1)(c), Mr. Boyter indicated an intent to restrict two of his children, Frances and Michael, to an amount less than the legitime, i.e., nothing. La. R.S. 9:2501(B)(1)(c) provides in pertinent part that the testament be governed by the law in effect at the time of the testator's death (no forced heirship) when the testament "indicates an intent to restrict the forced heir to an amount less than the legitime." Since the testator omitted Frances and Michael from his will and left the entire amount of his estate to the remaining two children, he clearly indicated an intent to leave nothing to Frances and Michael.
Accordingly, I respectfully dissent.
VICTORY, J., dissenting.
In my view § 2501(B)(1)(c) controls. The majority acknowledges that Mr. Boyter's testament omits two of his children, but maintains that the language of the will does not indicate an intent to restrict these "forced heirs" to an amount less than the legitime. I disagree. The language of Mr. Boyter's testament which affirmatively leaves all of his property to two of his four children, clearly and unequivocally indicates his intent that the omitted "forced heirs" are to be restricted to an amount less than the legitime, i.e., they are to get nothing.
NOTES
[*] Lemmon, J., not on panel. See Rule IV, Part 2, Sect. 3.
[1] Succession of Lawrence is the only reported case that specifically deals with the interpretation of La. R.S. 9:2501 (1990). Several cases mention La. R.S. 9:2501, but do not deal with the same factual issues as this case. For instance, in Succession of Fletcher, 94-1426 (La.App. 3 Cir. 4/5/95), 653 So.2d 119, writ denied, 95-C-1105 (La.6/16/95), 655 So.2d 338, the court noted in a footnote that it was unnecessary to consider the contention that La. C.C. art. 1621(12) was unconstitutionally vague because the testator was not a forced heir by virtue of La. R.S. 9:2501 and La. C.C. art 1493. The court of appeal noted that after the trial court's ruling, this Court declared La. R.S. 9:2501 and La. C.C. art. 1493 unconstitutional. In Succession of Fragala, 28,663 (La.App. 2 Cir. 9/27/96), 680 So.2d 1345, the Second Circuit Court of Appeal dealt with the issue of retroactivity as it related to La. R.S. 9:2501. In Succession of Jurisich, 94-1262 (La.App. 4 Cir. 4/25/96), 694 So.2d 928, the court found that Article 1493 only applied prospectively to successions of persons who died after December 31, 1995.
[2] Thereafter, La. R.S. 9:2501 was amended again by Act 1421 of 1997, effective July 15, 1997. The 1997 amendment is not before us in this case.
[3] La. Const. Art. XII, Sect. 5 provides:

(A) The legislature shall provide by law for uniform procedures and successions and for the rights of heirs or legatees and for testate and intestate succession. Except as provided in Paragraph B of this Section, forced heirship is abolished in this state. (B) The legislature shall provide for the classification of descendants, of the first degree, twenty-three years of age or younger as forced heirs. The legislature may also classify as forced heirs descendants of any age who, because of mental incapacity or physical infirmity, are incapable of taking care of their persons or administering their estates. The amount of the forced portion reserved to heirs and the grounds for disinherison shall also be provided by law. Trusts may be authorized by law and the forced portion may be placed in trust.
[4] Art. 1493 of the La. Civ.Code (as amended by Act 1180 of 1995 and Act 77 of the First Extraordinary Session of 1996) provides:

(A) Forced heirs are descendants of the first degree who, at the time of the death of the decedent, are twenty-three (23) years of age or younger or descendants of the first degree of any age who, because of mental incapacity or physical infirmity, are permanently incapable of taking care of their persons or administering their estates at the time of the death of the decedent.
[5] A few months later, in Succession of Elsie Lloyd Allison, 31,495 (La.App. 2 Cir.1999), 727 So.2d 683, the Second Circuit Court of Appeal again found that a testator's intent was clear because the testament omitted one of her sons, as well as the children of her predeceased son, and that the provisions of La. R.S. 9:2501 did not apply. The CA then applied the law in effect on the date of the testator's death.
[6] Her will read as follows: "This is my last will and testament. This is to certify that my beloved daughter Pearl Miles Reilly, known as Charlotte Shelby, is to have and to hold and fall heir to all of my belongings whatsoever, real estate, moneys, personal property, wherever located and I further name and appoint her my Executrix."
[7] Constitutional Article 13, Section 19(C) provided that "if a majority of the electors voting on the amendment approve it, the governor shall proclaim its adoption, and it shall become part of this constitution, effective twenty days after the proclamation...."
[8] Article XIII, Section 1, Paragraph C of the Louisiana Constitution, provides that:

A proposed amendment "... shall become part of this constitution effective twenty days after the proclamation ..." (Emphasis supplied).
[9] Act 1180, by its express terms, became effective on January 1, 1996.
[10] Before recently being amended, Article XII, Section 10 of the Louisiana Constitution provided:

(A) No immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to persons or property.
(B) Waiver in Other Suits. The legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability.
(C) Procedure; Judgments. The legislature shall provide a procedure for suits against the state, a state agency, or a political subdivision. It shall provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered.