STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


17-464


THE SWEET LAKE LAND AND OIL COMPANY, ET AL.

VERSUS

OLEUM OPERATING COMPANY, L.C., ET AL.


**********

ON SUPERVISORY WRITS FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2010-1272
HONORABLE DAVID ALEXANDER RITCHIE, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.


STAY LIFTED.  WRIT DENIED.


Guy E. Wall
Paul E. Bullington
Jonathon R. Cook
Sara Lewis
Wall, Bullington & Cook, LLC
540 Elmwood Park Blvd
Harahan, LA 70123
(504) 736-0347
COUNSEL FOR PLAINTIFF-RESPONDENT:
    Sweet Lake Land & Oil Co., LLC

**James P. Doré**
**Alan J. Berteau**
**Shannan Sweeney Rieger**
**Deborah J. Juneau**
**R. Benn Vincent, Jr.**
**Matthew B. Smith**
**Hattie V. Guidry**
**Kean Miller LLP**
**P. O. Box 3513**
**Baton Rouge, LA 70821**
**(225) 387-0999**
**COUNSEL FOR DEFENDANTS-APPLICANTS:**
      **Sohio Petroleum Company**
      **BP Exploration & Oil, Inc.**
      **BP Exploration, Inc.**
      **BP Products North America, Inc.**

**PICKETT, Judge.**

Defendants-Relators, BP Products North America, Inc.; BP Exploration & Oil, Inc.; BP Exploration, Inc.; and Sohio Petroleum Company ("BP"), seek a supervisory writ from the judgment of the trial court which denied their Motion for Adoption of LDNR's Most Feasible Plan Pursuant to La.R.S. 30:29 and ordered LDNR to submit a final plan by July 8, 2017.

## STATEMENT OF THE CASE

This case involves an oilfield contamination lawsuit that is governed by the 2012 version of La.R.S. 30:29, which was originally enacted by 2006 La. Acts 312 (Act). The plaintiff, the Sweet Lake Land & Oil Company, LLC, (Sweet Lake) filed suit against BP, among other defendants, alleging environmental damage to its property caused by decades of oil and gas exploration activities. After trial, conducted from May 11 through May 27, 2015, the jury found BP 100% liable for the environmental damage. On September 11, 2015, the trial court referred the case to the Louisiana Department of Natural Resources, Office of Conservation, (LDNR) for a public hearing and the development of the most feasible plan under La.R.S. 30:29. The judgment also ordered BP to submit to LDNR a plan to "remediate to applicable regulatory standards the contamination that resulted in the environmental damage to the Property." LDNR held a public hearing from April 25 through April 28, 2016.

Based upon the evidence presented and in response to questions raised by the LDNR panel, the LDNR issued and filed in the trial court record its "Most Feasible Plan and Written Reasons in Support as Required by La.R.S. 30:29" (LDNR plan) on October 3, 2016. Thereafter, on October 16, 2016, BP filed its motion for adoption of LDNR's plan pursuant to La.R.S. 30:29. Sweet Lake opposed the adoption, arguing the motion was premature because the plan was not

a "final plan" to clean up the property and was not even a "final plan" to evaluate the property. In reply, BP argued that the LDNR plan was a final plan, as La.R.S. 30:29 specifically contemplates that the final most feasible plan can require evaluation only, and the LDNR plan does much more.

At the February 15, 2017 hearing, the trial court denied BP's motion, ordering LDNR to perform additional work because the plan was only partially a remediation plan. The trial court's greatest concerns were those "parts" or areas of contamination, namely the groundwater and flowlines, where LDNR admittedly did not have enough information to formulate a remediation plan. In its written judgment, signed on May 9, 2017, the trial court specifically required the final plan to address those questionable areas and provide a remedial plan of action for same:

a. Address groundwater remediation on the property. . . . The final remediation plan may contain clean up options that depend upon the results of additional information and should be accompanied by an estimate of the cost to obtain the additional information. If LDNR is unable to provide the foregoing final remediation plan, it shall provide the Court with information to help the Court better order LDNR to do what needs to be done;

b. Specify the regulation or standard for each clean up activity so that the Court can enforce it;

c. Specify the flowlines on the property and include a remediation plan for flowlines that must be removed; and

d. State whether a response or command was received from any other agency to whom the October 3, 2016 LDNR plan was submitted pursuant to La. R.S. 30:29[C](3)(b)(i) and (ii).

The Department shall submit this final remediation plan within 60 days of this order but the Department may move the Court for an extension of this deadline.

BP filed this writ application seeking "prompt" review of the trial court's rejection of LDNR's most feasible plan. We granted the writ for full briefing and to issue an opinion and stayed the trial court's order directed at the LDNR. *Sweet*

*Lake Land & Oil Co., LLC v. Oleum Operating Co., L.C.*, an unpublished writ disposition bearing docket number 17-464 (La.App. 3 Cir. 6/13/17).

## SUPERVISORY RELIEF

"The proper procedural vehicle to contest an interlocutory judgment that does not cause irreparable harm is an application for supervisory writs. *See* La. C.C.P. arts. 2087 and 2201." *Brown v. Sanders*, 06-1171, p. 2 (La.App. 1 Cir. 3/23/07), 960 So.2d 931, 933. But see La.Code Civ.P. art. 2083, comment (b), "Irreparable injury continues to be an important (but not exclusive) ingredient in an application for supervisory writs." (Citation omitted.) A court of appeal has plenary power to exercise supervisory jurisdiction over trial courts and may do so at any time, according to the discretion of the court. When the trial court's ruling is arguably incorrect, a reversal will terminate the litigation, and there is no dispute of fact to be resolved, judicial efficiency and fundamental fairness to the litigants dictate that the merits of the application for supervisory writs should be decided in an attempt to avoid the waste of time and expense of a possibly useless future trial on the merits. *Herlitz Const. Co., Inc. v. Hotel Inv'rs of New Iberia, Inc.*, 396 So.2d 878 (La.1981) (per curiam).

## DISCUSSION

The proper interpretation and application of statutory provisions are subject to *de novo* review. *Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc.*, 06-582 (La. 11/29/06), 943 So.2d 1037. The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the Legislature to enact the law. *In re Succession of Boyter*, 99-0761 (La. 1/7/00), 756 So.2d 1122. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of

3

the intent of the legislature." La.Civ.Code art. 9. Though the language of the law may be susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the words of law must be given their generally prevailing meaning. La.Civ.Code arts. 10 and 11. The meaning of ambiguous terms must be sought by examining the context in which they occur and the text of the law as a whole, and laws on the same subject matter must be interpreted in reference to each other. La.R.S. 1:3; La.Civ.Code. arts. 12 and 13. "Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided." *Boyter*, 756 So.2d at 1129. "If application of the foregoing rules of interpretation fails to illuminate definitively the legislature's intent, only then should the rule of strict construction apply to the interpretation of laws in derogation of common rights . . . ." *Hutchinson v. Patel*, 93-2156 (La 5/23/94), 637 So.2d 415, 421.

Through its enactment of La.R.S. 30:29, the legislature established a sequenced protocol for the management of cases alleging environmental contamination and the remediation of contaminated properties. Once the factfinder determines that environmental contamination has occurred and that defendant caused or is legally responsible for such damage, La.R.S. 30:29(C)(emphasis added) sets forth the remediation protocol:

> C.(1) *If at any time during the proceeding* a party admits liability for environmental damage or *the finder of fact determines that environmental damage exists and determines the party or parties who caused the damage or who are otherwise legally responsible therefor, the court shall order the party* or parties who admit responsibility or whom the court finds legally responsible for the damage *to develop a plan or submittal for the evaluation or remediation* to applicable regulatory standards of the contamination that resulted in the environmental damage. *The court shall order that the plan be developed and submitted to the department and the court* within a time that the court determines is reasonable *and shall allow*

4

*the plaintiff or any other party* at least thirty days from the date each plan or submittal was made to the department and the court *to review the plan or submittal and provide to the department and the court a plan, comment, or input in response thereto*. The department shall consider any plan, comment, or response provided timely by any party. The department shall submit to the court a schedule of estimated costs for review of the plans or submittals of the parties by the department and the court shall require the party admitting responsibility or the party found legally responsible by the court to deposit in the registry of the court sufficient funds to pay the cost of the department's review of the plans or submittals. Any plan or submittal shall include an estimation of cost to implement the plan

(2)(a) Within sixty days from the last day on which any party may provide the department with a plan, comment, or response to a plan as provided in Paragraph (C)(1) of this Section, *the department shall conduct a public hearing on the plan or plans submitted*. When a public hearing is held following a limited admission pursuant to the Code of Civil Procedure Article 1563, then the department shall not conduct an additional public hearing pursuant to this Section for the same environmental damage. *Within sixty days of the conclusion of the hearing, the department shall approve or structure a final plan, or if applicable, a preliminary plan pursuant to Subparagraph (C)(3)(b) of this Section, based on the evidence submitted which the department determines to be the most feasible plan to evaluate or remediate the environmental damage and protect the health, safety, and welfare of the people.* The department shall issue written reasons for the plan it approves or structures. On motion of the department, for good cause shown, the court may grant the department additional time, not to exceed sixty days, within which to either conduct the hearing or approve a plan with reasons.

(b) Except as otherwise provided for in this Section, from the date the party or parties, who admit responsibility or whom the court finds legally responsible for the damage, submit a plan to the department until after the department has filed with the court the approved feasible plan for the evaluation or remediation of the environmental damage, no party to the litigation, either directly or indirectly, shall have ex parte communication with any employee, contractor, or representative of the department regarding the formation of the feasible plan or an agency providing comments to the department regarding the formation of the feasible plan. The feasible plan issued by the department shall contain a signed affidavit of compliance with this restriction. Any comments provided by an agency to the department shall also contain a signed affidavit of compliance with this restriction.

(3)(a) The department shall use and apply the applicable regulatory standards in approving or structuring a plan that the department determines to be the most feasible plan to evaluate or remediate the environmental damage.

(b)(i) *If the department preliminarily approves or structures a preliminary plan that requires the application of regulatory standards of an agency other than the department or that provides*

*an exception from the department's standards, within fifteen days of such preliminary structuring or approval, the department shall submit the plan to the Department of Agriculture and Forestry, the Department of Environmental Quality, and the Department of Natural Resources for review and comment.* Within thirty days after the department's submission of the plan to all of the agencies, each agency may provide written comments regarding the plan. Each agency providing written comments shall submit a schedule of the agency's costs for review of the plan to the court for reimbursement by the responsible party. Failure of an agency to respond to the department shall not affect the validity of the plan approved by the department. The department and agency heads shall coordinate in order to establish protocol to ensure inter-agency communication regarding plan development, timely delivery of all proposed plans to the appropriate agency heads, and timely receipt of all agency comments back to the department.

(ii) Within thirty days after the receipt of any agency's written comments, *the department shall file in the court record the final plan, with written reasons that the department determines to be the most feasible plan to evaluate or remediate the environmental damage under applicable regulatory standards, together with any comments submitted by an agency under Item (i) of this Subparagraph.* Based on the findings of the department, the department may issue any compliance order it deems necessary to either the operator of record or, where applicable, a party found responsible or admitting responsibility for implementing the most feasible plan to evaluate or remediate the environmental damage under applicable regulatory standards. If a compliance order is issued against the responsible party who is not the current operator of record, the responsible party shall give the current operator of record notice of the compliance order within thirty days of the responsible party's receipt of the compliance order.

(4) The plan approved by the department for submission to the court shall not be considered to be an adjudication subject to appellate review pursuant to R.S. 49:964 or R.S. 30:12.

(5) *The court shall adopt the plan approved by the department, unless a party proves by a preponderance of the evidence that another plan is a more feasible plan to adequately protect the environment and the public health, safety, and welfare.* The court shall enter a judgment adopting a plan with written reasons assigned. Upon adoption of a plan, the court shall order the party or parties admitting responsibility or the party or parties found legally responsible by the court to fund the implementation of the plan.

(6)(a) Any judgment adopting a plan of evaluation or remediation pursuant to this Section and ordering the party or parties admitting responsibility or the party or parties found legally responsible by the court to deposit funds for the implementation thereof into the registry of the court pursuant to this Section shall be considered a final judgment pursuant to the Code of Civil Procedure Article 2081 et seq., for purposes of appeal.

(b) Any appeal under this Section shall be a de novo review and shall be heard with preference and on an expedited basis.

(c) The appellate court may affirm the trial court's adoption of a plan or may adopt a feasible plan in conformity with this Section and shall issue written reasons for its decision.

As contemplated by these provisions, a trial court, upon a finding of liability/responsibility, (1) refers the matter to LDNR to develop a remediation plan, (2) orders the responsible party to develop a plan for the "evaluation or remediation to applicable standards" of the contamination and submit same to LDNR and the court, and (3) allows the plaintiff and other parties to review the plan submitted by the responsible party and to provide to LDNR and the court a plan, comment, or input in response thereto. La.R.S. 30:29(C)(1). LDNR then conducts a public hearing on the submitted plans and either approves one of the submitted plans or comes up with its own plan. La.R.S. 30:29(C)(2) & (3). If LDNR's plan requires the application of another agency's regulatory standards or an exception from LDNR's standards, LDNR must submit its preliminary plan to the other agencies for review and comment, but failure of an agency to respond does not affect the validity of the plan. La.R.S. 30:29(C)(3)(b)(i). Thereafter, LDNR files its final plan with written reasons in the trial court record. La.R.S. 30:29(C)(3)(b)(ii). The statute then mandates: "The court shall adopt the plan approved by the department, unless a party proves by a preponderance of the evidence that another plan is a more feasible plan to adequately protect the environment and the public health, safety, and welfare." La.R.S. 30:29(C)(5).

BP challenges the trial court's refusal to adopt the LDNR plan herein as an error of law in contravention of the mandatory requirements of La.R.S. 30:29(C)(5) cited above. First, BP claims the LDNR plan is, in fact, a final plan pursuant to the statutory provisions, which include, by their express terms, plans for "evaluation or remediation." Under the Act, the plan filed with the trial

7

court—whether an "evaluation" plan, a "remediation" plan, or both—should be considered the final plan. Therefore, BP argues the trial court had no authority to unilaterally determine the finality of the plan or to decide the LDNR plan was not "final" because it was not a "remediation-only" plan.

Second, BP asserts the LDNR plan satisfies the requirements of La.R.S. 30:29 as it was developed by a panel of LDNR personnel embodying a variety of environmental disciplines that heard the testimony of both parties' witnesses and received into evidence documents selected by each party supporting and opposing the plans submitted. Moreover, it contains the detailed findings on the nature and extent of any "environmental damage" and the steps required of BP to address that damage.

Third, BP argues the trial court impermissibly narrowed the definition of a final most feasible plan to mean a remediation-only plan. In support of its position, BP cites *State v. La. Land & Expl. Co., Inc.*, 82,162 (15th JDC), in which Judge Jerome Winsburg (Ad Hoc) adopted an LDNR plan, which included a significant evaluation component (including evaluation of groundwater and soil). BP further notes this court denied writs, citing the availability of an appeal remedy. *State v. La. Land & Expl. Co., Inc.*, 16-914 (La.App. 3 Cir. 11/30/16) (unpublished).

According to BP, it is undisputed that Sweet Lake did not introduce any evidence to demonstrate that another plan "is a more feasible plan to adequately protect the environment and the public health, safety and welfare." La.R.S. 30:29(C)(5). BP argues the trial court has essentially usurped the primary role assigned to LDNR by statute and has no authority to unilaterally determine the finality of a plan in the absence of a showing, by a preponderance of the evidence, of a more feasible plan.

In opposition, Sweet Lake asserts that La.R.S. 30:29 is silent on (1) whether the trial court must accept a final plan, which calls for further evaluation, when it ordered a plan of remediation, as well as (2) the participation of the court and the landowner after a final plan is adopted by the court. The trial court expressed concern that adopting a plan that merely requires the responsible party to submit a plan to LDNR to evaluate the property could lead to a remediation plan not approved by the trial court or with input from the landowner. Sweet Lake notes that no appellate court has addressed these issues despite BP's claims that numerous trial courts have adopted similar plans.

Sweet Lake also submits that an LDNR plan, which orders a responsible party to prepare a plan of investigation and evaluation of groundwater and soil contamination in response to a trial court order requiring a remediation plan, is not a final plan. It further argues the term "evaluation" in La.R.S. 30:29 is used to cover situations where a party settles and assumes responsibility or formally admits responsibility before trial because otherwise damages are evaluated at trial. Moreover, according to Sweet Lake, it does not make sense to issue a final judgment where LDNR did not even estimate the cost of further evaluation as La.R.S. 30:29 contemplates the final judgment will order the responsible party to deposit into the trial court's registry the funds needed to remediate the property. Additionally, Sweet Lake asserts the trial court has primary jurisdiction over this matter, and LDNR's stamping of a plan as final is not determinative. Until LDNR submits a remediation plan, the trial court is not required to adopt the LDNR plan as the most feasible plan under La.R.S. 30:29.

Alternatively, Sweet Lake requests that, in the event this court reverses the trial court's interpretation of La.R.S. 30:29, this Court remand the matter to the trial court for hearing on the final plan in light of this court's decision. It also

claims that it presented to the trial court an alternative to LDNR's plan; so if this court grants BP's writ and determines remand is inappropriate, Sweet Lake requests that its feasible plan be adopted. Finally, Sweet Lake posits that *State v. La. Land & Expl. Co., Inc.*, has no relevance to the instant matter as this court merely denied writs, and the issue therein was whether plaintiff, and not the responsible party, should perform remediation and evaluation.

This matter raises several *res nova* issues regarding the authority and roles of the trial court and LDNR after LDNR files its most feasible plan in the trial court record. The primary issue is whether the trial court can order LDNR to re-submit a plan for remediation when the judgment called for such a plan and the originally submitted plan still requires evaluation. Admittedly, the statute does not provide for a resubmission to LDNR but, rather, explicitly mandates the adoption of the plan submitted by LDNR, unless it has been shown by a preponderance of the evidence that a more feasible plan exists. Herein, although Sweet Lake apparently submitted a plan, there was no evidence, much less a preponderance of evidence, as to whether its plan was more feasible than LNDR's plan. During the hearing, the experts mainly testified regarding the flaws and proper interpretation of the LDNR plan.

By the explicit terms of La.R.S. 30:29(C)(2), (3), & (5), the role of LDNR is to develop the most feasible plan and file the plan in the court record, while the role of the trial court is to adopt the plan unless evidence supports otherwise. Nevertheless, both the "court and the department shall retain oversight to ensure compliance with the plan." La.R.S. 30:29(F). The problem herein is that the judgment called for a remediation plan, and no one disputes the LDNR plan is not strictly remedial because, even with the expert reports, LDNR did not have sufficient information to formulate a plan for remedial action in certain areas,

10

namely groundwater contamination and flowlines. Furthermore, while La.R.S. 30:29(C)(5)(b) does provide for a preliminary plan, the language of La.R.S 30:29(C)(b)(ii) seems to indicate such a plan becomes final when filed in the court record and does not provide for preliminary review and comment by the trial court upon submission. Interestingly, the final sentence of the LDNR plan filed herein states: "This will be and/or is being forwarded. It is being sent to the other appropriate agencies set forth in La. R.S. 30:29 (C)(3)(b)(i) for comments prior to being finalized and filed with the Court in accordance with La. R.S. 30:29(C)(3) & (4)." The trial court noted the reference as well, pondering whether it was merely an oversight or whether it indicated the plan was merely preliminary. Arguably, the filing of the plan in the trial court record best indicates its finality as the statute does not provide for preliminary filings.

Moreover, the supreme court in *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371, pp. 37-38 (La. 7/1/08), 998 So.2d 16, 32, stated in *dicta*: "Finally, it is the district court who considers the various restoration plans, including any that the surface owner may choose to submit, determines which one is most feasible, and oversees the implementation of the restoration plan. La.Rev.Stat. § 30:29(C)(5)." In *State v. Louisiana Land and Exploration Co.*, 12-884, p. 16 (La. 1/30/13), 110 So.3d 1038, 1049, the supreme court explained that "although the La. DNR has input into the plan to remediate the property, the final decision as to the remediation plan adopted rests with the court. Throughout the remediation process, the court remains the gatekeeper to ensure the purpose of the Act is accomplished--remediation of the property to the extent of the public's interest."

Inherent in the trial court's authority as gatekeeper in this statutory scheme is the option of rejecting an LDNR plan it determines is incomplete and ordering LDNR to fully comply with its original order pursuant to the statute. We find the

11

trial court did not err here, where LDNR failed to submit a plan for groundwater or flowline remediation, and, instead, its plan consisted of further testing by BP the plan would be revised accordingly. The trial court determined that the submission by LDNR did not constitute a final plan, and, therefore, the submission was incomplete. The trial court ordered LDNR to supplement the plan submitted to the court to include options for groundwater remediation. Based on our interpretation of the statute and the authority granted to the trial court under the statute, we find no error in the trial court's failure to approve the final plan or in its order to supplement the plan.

## CONCLUSION

After reviewing the judgment of the trial court and the submissions of the parties, we find no error in the trial court's ruling. The application for supervisory writs filed by BP is hereby denied. The stay issued by this court on June 13 is hereby lifted, and the case is remanded to the trial court for further proceedings consistent with this opinion.

**STAY LIFTED. WRIT DENIED.**