STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 CA 1169

*Mut*
*CHH*

LOUISIANA WETLANDS, LLC AND NEW 90, LLC

VERSUS

ENERGEN RESOURCES CORPORATION, CHEVRON USA, INC.,
SOUTHERN NATURAL GAS COMPANY, LLC, EP ENERGY E&P
COMPANY, LP, AND BRAMMER ENGINEERING, INC.

Judgment Rendered: **NOV 3 0 2023**

* * * * *

On Appeal from the
16th Judicial District Court
In and for the Parish of St. Mary
State of Louisiana
District Court No. 130527

Honorable Suzanne deMahy, Judge Presiding

* * * * *

| | |
|---|---|
| Bernard E. Boudreaux, Jr.<br>John T. Arnold<br>Baton Rouge, LA | Attorneys for Plaintiff-Appellant,<br>James J. Bailey, III, individually and<br>as representative of the Successions of<br>Willie Palfrey Foster and Fairfax<br>Foster Bailey |

Christopher W. Swanson
Danielle C. Teutonico
E. Blair Schilling
Emma E. Daschbach
Gladstone N. Jones, III
James R. Swanson
Kevin E. Huddell
Lance C. McCardle
Lindsay E. Reeves
Michael P. Arata
Rosa E. Acheson
New Orleans, LA

Robert P. Fuhrer
Morgan City, LA

*Chutz, J. concurs with reasons. By CHH*

Bradley J. Schlotterer  
Daniel B. Stanton  
New Orleans, LA

Attorneys for Plaintiff-Appellant,  
Brammer Engineering, Inc.

Claire E. Juneau  
Edward H. Warner  
John C. Funderbunk  
Louis V. Gregoire, Jr.  
Baton Rouge, LA

Attorneys for Defendant-Appellee,  
Chevron U.S.A., Inc.

Claudia Carrizales  
Louis M. Grossman  
Michael R. Phillips  
New Orleans, LA

Brian D. Melton  
David M. Peterson  
Elizabeth R. Taber  
Laranda M. Walker  
Houston, TX

Alan J. Berteau  
Richard D. McConnell, Jr.  
Tyler M. Kostal  
Baton Rouge, LA

Attorneys for Defendant-Appellee,  
Southern Natural Gas Company, LLC

Chynna M. Anderson  
Rachel M. Scarafia  
New Orleans, LA

Andrew J. Brien  
David S. Landry  
Russell L. Foster  
New Orleans, LA

Attorneys for Defendant-Appellee,  
Energen Resources Corporation

Esteban Herrera, Jr.  
Richard D. McConnell, Jr.  
Samuel O. Lumpkin  
Baton Rouge, LA

Attorneys for Defendant-Appellee,  
EP Energy E&P Company, LP

Brittan J. Bush  
Court C. VanTassell  
Emily C. Borgen  
George Arceneaux, III  
John S. Troutman  
Penny L. Malbrew  
Lafayette, LA

Attorneys for Defendant-Appellee,  
BP America Production Company

Kelly B. Becker  
New Orleans, LA

\* \* \* \* \*

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

2

**HESTER, J.**

In this legacy litigation,[1] James J. Bailey, III, individually and as the representative of the Successions of Willie Palfrey Foster and Fairfax Foster Bailey ("plaintiff"), appeals a judgment dated July 15, 2022, by which the district court adopted the Louisiana Department of Natural Resources, Office of Conservation's ("LDNR"), Most Feasible Plan for Necessary Evaluation ("MFP") in accordance with Louisiana Revised Statute 30:29.[2] For the following reasons, we affirm the district court's judgment.

## FACTS AND PROCEDURAL HISTORY

This case involves a 300-acre tract of land located in St. Mary Parish, near the Town of Franklin. It is undisputed that oil and gas exploration and production activities were conducted on various areas of the property, beginning in 1948. However, in December 2016, the original plaintiffs, Louisiana Wetlands, LLC and New 90, LLC,[3] filed this lawsuit, alleging that soil and groundwater testing conducted on the property revealed contamination and environmental damage caused by these historical oil and gas operations. In the Petition for Damages,

---

[1] As noted by the Louisiana Supreme Court, these types of actions are referred to as "legacy litigation" because they often arise from operations conducted many decades ago, leaving an unwanted "legacy" in the form of actual or alleged contamination. See **Marin v. Exxon Mobil Corporation**, 2009-2368, 2009-2371 (La. 10/19/10), 48 So.3d 234, 238, n.1, (citing Loulan Pitre, Jr., "Legacy Litigation" and Act 312 of 2006, 20 Tul. Envt. L.J. 347, 348 (Summer 2007)).

[2] Louisiana Revised Statute 30:29, sometimes referred to as "Act 312," has a stated legislative purpose of "ensur[ing] that damage to the environment is remediated to a standard that protects the public interest. To this end, this Section provides the procedure for judicial resolution of claims for environmental damage to property arising from activities subject to the jurisdiction of the Department of Natural Resources, [O]ffice of [C]onservation." La. R.S. 30:29(A). Of note, the Commissioner for the Department of Natural Resources, Office of Conservation, has "jurisdiction and authority over all persons and property necessary to enforce effectively the provisions of this Chapter and all other laws relating to the conservation of oil or gas." La. R.S. 30:4(A).

[3] James J. Bailey, III, individually and as representative of the Successions of Willie Palfrey Foster and Fairfax Foster Bailey, is the sole remaining plaintiff in this suit. Through the second supplemental and amending petition, Louisiana Wetlands, LLC was removed as party plaintiff, and Mr. Bailey added as a new party plaintiff. All claims of New 90, LLC were later dismissed through summary judgment. **Louisiana Wetlands, LLC v. Energen Resources Corporation**, 2021-0290 (La. App. 1st Cir. 10/4/21), 330 So.3d 674, 680, writ denied, 2021-01610 (La. 1/12/22), 330 So.3d 614.

3

numerous defendants were named, including appellees, Chevron U.S.A. Inc. ("Chevron") and Southern Natural Gas Company, L.L.C. ("SNG"), who were alleged to have "conducted, directed and participated in various oil and gas exploration and production activities and/or working interest owners and/or joint venturers in the Franklin Field and on [the] property," which activities included "the operation or construction of various oil and gas facilities, including but not limited to pits, sumps, pipelines, flowlines, tank batteries, wellheads, and measuring facilities." The Petition also claimed that "[d]efendants knew or should have known that their day to day operations [...] would cause the soil, surface waters and groundwater of Plaintiffs' property to be contaminated[.] Defendants' failure to timely remove or remediate this toxic pollution in the soils and groundwater of Plaintiffs' property has allowed the pollution to migrate and spread, thereby causing damages, including but not limited to, contained soil and groundwater, land loss, and loss of timber[,]" and that "[a]t no time did [d]efendants issue any warning to Plaintiffs that their disposal and discharge activities were hazardous to [the] property[.]"

In August and September of 2020, and in accordance with La. Code Civ. P. art. 1563(A)(1)[4], SNG and Chevron, respectively, filed limited admissions with the district court, each admitting to being a "responsible party" for the environmental damage occurring on plaintiff's property. As a result, the district court referred the

[4] Louisiana Code of Civil Procedure article 1563(A)(1) provides, "[i]f any party admits liability for environmental damage pursuant to R.S. 30:29, that party may elect to limit this admission of liability for environmental damage to responsibility for implementing the most feasible plan to evaluate, and if necessary, remediate all or a portion of the contamination that is the subject of the litigation to applicable regulatory standards, hereinafter referred to as a 'limited admission.' A limited admission shall not be construed as an admission of liability for damages under R.S. 30:29(H), nor shall a limited admission result in a waiver of any rights or defenses of the admitting party."

4

matter to LDNR[5], ordering SNG and Chevron to submit plans for evaluation or remediation of environmental damage to applicable regulatory standards. SNG and Chevron timely submitted plans to LDNR on September 11, 2020 and November 9, 2020, respectively; plaintiff did not submit any plan to LDNR.

Following a four-day hearing in February 2021, LDNR "partially accept[ed]" the plans submitted by Chevron and SNG, but ultimately structured its own plan, the underlying MFP, which required further evaluation and testing in some areas of plaintiff's property, remediation of soils in some areas, and groundwater monitoring in other areas. Of particular note, the MFP required additional groundwater classification before appropriate remediation standards could be applied: "the development of RECAP concentration standards cannot be accurately determined because [LDNR] cannot make an accurate determination regarding the groundwater classification at this time." Moreover, the MFP expressly stated, "[a] MFP[,] including the full cost of remediation[,] cannot be provided at this time by [LDNR], but can only be developed after the full extent of contamination has been determined." LDNR's MFP was then submitted to the district court in accordance with La. R.S. 30:29(C)(2) & (4) by way of a joint motion from Chevron and SNG.

The matter came before the district court on July 14-15, 2022, with the district court granting Chevron and SNG's motion to adopt LDNR's MFP, finding "no deficiencies" therein. Of note, although not submitted to LDNR, plaintiff did submit to the district court his proposed most feasible plan, the "ICON plan," which the district court determined was not more feasible, as it called for "immediate remediation of soil and groundwater regardless of whether it has been fully determined that full remediation and/or background groundwater remediation is

---

[5] See La. Code Civ. P. art. 1563(A)(2) ("[…] if one or more of the defendants have made a timely limited admission, the court shall refer the matter to the Department of Natural Resources, [O]ffice of [C]onservation, […], to conduct a public hearing to approve or structure a plan which the department determines to be the most feasible plan to evaluate or remediate the environmental damage under the applicable regulatory standards pursuant to the provisions of R.S. 30:29."

5

necessary to protect the health, safety, and welfare of the people." In giving reasons for judgment, the district court expressly noted that the engineers who drafted plaintiff's ICON plan did not consider Act 312 in its formation, and did not conduct a risk assessment as a part of the ICON plan. The district court concluded, stating, "[r]equiring remediation without first completing a full evaluation of environmental damage is unreasonable, and not feasible. This [c]ourt accepts and adopts the LDNR Plan as the Most Feasible Plan for Evaluation pursuant to Louisiana Revised Statutes 30:29." Lastly, the district court allowed Chevron and SNG to submit a bond in the amount of $1,082,400.00, in lieu of a cash deposit, to fund the MFP's implementation. It is from this judgment that plaintiff seeks review.[6]

## ASSIGNMENTS OF ERROR

Plaintiff assigns the following as error:

1. The district court erred in adopting an MFP for evaluation that does not address the remediation standards that will apply to the remediation methods that are adopted at the end of the ordered evaluation.

2. The [d]istrict [c]ourt erred in adopting an MFP that leaves open the possibility that LDNR could subsequently order a remediation that allows Chevron and SNG exceptions from the applicable regulatory requirements.

## DISCUSSION

From the outset, we are compelled to take note of the constrained review available to this court. Under the framework of Act 312, "[i]n all cases in which a party makes a limited admission of liability ... there shall be a rebuttable presumption that the plan approved or structured by [LDNR], ... shall be the most feasible plan to evaluate or remediate to applicable regulatory standards the environmental damage for which responsibility is admitted." La. R.S.

---

[6] Louisiana Revised Statute 30:29(C)(6)(a) states, "[a]ny judgment adopting a plan of evaluation or remediation pursuant to this Section and ordering the party or parties admitting responsibility or the party or parties found legally responsible by the court to deposit funds for the implementation thereof into the registry of the court pursuant to this Section shall be considered a final judgment pursuant to the Code of Civil Procedure Article 2081 et seq., for purposes of appeal."

6

30:29(C)(2)(c). Next, unless the plaintiff can prove by a preponderance of the evidence that "another plan is a more feasible plan to adequately protect the environment and the public health, safety, and welfare[,]" the district court is mandated to adopt the plan advanced by LDNR. La. R.S. 30:29(C)(5).[7] Lastly, and in continuing Act 312's clear deference to remediation plans advanced by LDNR, any review by the appellate court is limited to a binary option: it "may affirm the trial court's adoption of a plan or may adopt a feasible plan in conformity with this Section and shall issue written reasons for its decision." La. R.S. 30:29(C)(6)(c).[8] Under the limited review available to this court, contrary to arguments by plaintiff,[9] no option exists to vacate or remand to the district court to correct any alleged errors contained in remediation plans submitted to, and adopted by, it, or for this court to select portions of plans submitted to the district court and create our own.

At the district court, as noted above, plaintiff submitted his ICON plan, which was rejected as not being a more feasible plan than the plan submitted by LDNR. However, upon seeking review with this court, we note plaintiff did not assign as error that the district court failed to find his ICON plan proved by a preponderance of the evidence that it "is a more feasible plan to adequately protect the environment

---

[7] We note, in contrast, **Sweet Lake Land and Oil Company v. Oleum Operating Company, L.C.**, 2017-464 (La. App. 3rd Cir. 10/18/17), 229 So.3d 993, 1001, wherein the district court refused to adopt an MFP advanced by LDNR which "did not have sufficient information to formulate a plan for remedial action in certain areas, namely groundwater contamination and flowlines." The district court determined that the plan submitted by LDNR "did not constitute a final plan, and, therefore, the submission was incomplete. The [district] court ordered LDNR to supplement the plan submitted to the court to include options for groundwater remediation." **Id.** at 1002. Despite the statutory mandate of La. R.S. 30:29(C)(5), on review, the appellate court found no error in the district court's failure to approve the final plan or in its order to supplement the plan. **Id.**

[8] Although La. R.S. 30:29(C)(6)(b) provides this court with a *de novo* standard of review, this appears incongruent with the restricted options available to this court upon such review.

[9] In brief, plaintiff argues, without jurisprudential support, that this court, under La. R.S. 30:29(C)(6), may "vacate the order of the district court adopting the MFP and remanding with instructions to remand to LDNR to propose a MFP that states the remedial standards that will apply to the remediation that will follow on the further evaluation, and that forecloses any exceptions from those standards; or it may vacate the order of the district court and render its own order adopting the MFP[.]" Additionally, plaintiff asserts this court has "sui generis plan-formation authority provided under Act 312." However, the plain language of the statute does not provide the appellate court those options.

7

and the public health, safety, and welfare." La. R.S. 30:29(C)(5). Additionally, neither in his brief nor his prayer for relief does plaintiff argue for the adoption of his ICON plan by this court. Although plaintiff designated the record on appeal to address the issue of whether his "proposed MFP constituted a 'more feasible plan' under Act 312[,]" it is well established that matters neither assigned as error, nor argued, may be considered abandoned. Uniform Rules-Courts of Appeal, Rule 2-12.4(B)(4); **Doucet v. Champagne**, 94-1631 (La. App. 1st Cir. 4/7/95), 657 So.2d 92, 100, writ denied, 95-1759 (La. 11/3/95), 661 So.2d 1379. Accordingly, due to the lack of such an assignment of error or briefing on the part of plaintiff, any review by this court as to whether plaintiff's ICON plan is a more feasible one, in total, is not before us,[10] and there are otherwise no plans this court may adopt to satisfy La. R.S. 30:29(C)(6)(c).

Based on the arguments presented before us, and in accordance with La. R.S. 30:29(C)(6)(c), we find that we are constrained to affirm the district court's July 15, 2022 judgment adopting LDNR's MFP. Nevertheless, and in addition, we briefly turn to plaintiffs' two assignments of error. First, plaintiff argues the district court "failed procedural rectitude" by adopting an evaluation MFP that does not provide the applicable remediation standards to be applied following the ordered evaluation.

It is undisputed that Act 312 does not require LDNR to structure a remediation plan, as the statute makes clear that the most feasible plan may call solely for "evaluation," including additional "investigation [and] testing."[11] Further, because La. R.S. 30:29(I)(2) defines "environmental damage" as any "actual or potential

---

[10] Chevron and SNG argue to this court that plaintiff, by failing to assign the district court's refusal to adopt the ICON plan as error, has abandoned this issue before the appellate court.

[11] See La. R.S. 30:29(C)(2)(a) ("[LDNR] shall approve or structure a final plan ... which [LDNR] determines to be the most feasible plan to evaluate or remediate the environmental damage ... ."); La. R.S. 30:29(C)(6)(a) ("Any judgment adopting a plan of evaluation or remediation ... shall be considered a final judgment ... ."); La. R.S. 30:29(G) ("The provisions of [Act 312] are intended to ensure evaluation or remediation of environmental damage."); La. R.S. 30:29(I)(3) "'[e]valuation or remediation' shall include but not be limited to investigation, testing, monitoring, containment, prevention, or abatement."

8

impact ... caused by contamination resulting from activities associated with oilfield sites or exploration and production sites[,]" the Louisiana Legislature has provided a way to allow defendants to issue a limited admission of liability pursuant to Act 312 – as Chevron and SNG did herein – such that the process "for implementing the most feasible plan to evaluate, *and if necessary*, remediate" the environmental damage can begin. See La. Code Civ. P. art. 1563(A)(1) (emphasis added). Therefore, we agree with defendants: "[b]ecause Act 312 allows LDNR to issue a plan for further evaluation before making a final decision on remediation, it follows that an evaluation plan need not identify the specific numeric values to which constituents in the soil and groundwater may need to be remediated if remediation ultimately proves [un]necessary after further evaluation." Without the results of the evaluation, the necessity, extent, and components of additional remediation cannot be known.

Moreover, should remediation be necessary following the MFP's ordered evaluation, according to LDNR, the "principal regulatory standard for groundwater evaluation and/or remediation in every Act 312 [case] where groundwater has been an issue[]" has been LDEQ's Risk Evaluation and Corrective Action Plan ("RECAP"). In fact, LDNR and LDEQ entered into a memorandum of understanding that streamlines the use of RECAP procedures for the evaluation or remediation of groundwater conditions at oilfield sites. The use of RECAP as an applicable regulatory standard to groundwater is critical because, under RECAP, appropriate and acceptable groundwater standards are separated according to groundwater classification, and soil standards are separated according to land use. Therefore, once the land use and groundwater classification are determined, the "final numerical value[s]" for acceptable concentrations in the soil and groundwater can be established. As noted, the MFP at issue specifically states "the development of RECAP concentration standards cannot be accurately determined because

9

[LDNR] cannot make an accurate determination regarding the groundwater classification at this time. These values will be established after determination of the groundwater classification. RECAP parameters shall be delineated to non-industrial concentrations." Therefore, we find that, consistent with RECAP's framework, the adopted MFP prescribed the path to determine the final numeric values that will apply to any additional remediation conducted after the required groundwater evaluation. This assignment of error lacks merit.

Second, plaintiff argues, without any statutory or jurisprudential support, that the district court erred by adopting an MFP which leaves open the possibility that LDNR could subsequently order a remediation to which defendants might obtain an exception from the applicable regulatory requirements. However, based on the same reasoning as addressed above, if LDNR were required to definitively grant or deny any exception from the remediation standards before the environmental damage is fully evaluated, Act 312's option for evaluation plans is pointless. We find the plaintiff's argument is without merit.

## CONCLUSION

For the above reasons and, in compliance with Louisiana Revised Statute 30:29(C)(6)(c), the district court's July 15, 2022 judgment adopting the Louisiana Department of Natural Resources, Office of Conservation's, Most Feasible Plan for Necessary Evaluation is affirmed. Costs of this appeal are assessed against plaintiff/appellant, James J. Bailey, III, individually and as representative of the Successions of Willie Palfrey Foster and Fairfax Foster Bailey.

**AFFIRMED.**

10

| | |
|---|---|
| LOUISIANA WETLANDS, LLC AND NEW 90, LLC | STATE OF LOUISIANA |
| VERSUS | COURT OF APPEAL |
| ENERGEN RESOURCES CORPORATION, CHEVRON USA, INC., SOUTHERN NATURAL GAS COMPANY, LLC, EP ENERGY E&P COMPANY, LP, AND BRAMMER ENGINEERING, INC. | FIRST CIRCUIT  2022 CA 1169 |

WRC by CHH

**Chutz, J., concurs in the result and assigns reasons.**

I assign reasons for the limited purpose of pointing out that, while concurring in the result reached by the majority, I disagree with the statement in the majority opinion that the *de novo* standard of review provided in La. R.S. 30:29(C)(6)(b) "appears incongruent with the restricted options available to this court upon such review." In appeals such as the present one, this court's options are limited by La. R.S. 30:29(C)(6)(c) to either affirming the trial court's adoption of a plan or adopting a feasible plan in conformity with La. R.S. 30:29. I see no incongruence between the limitation to these options and the application of a *de novo* standard of review by this court. Rather, I believe the legislative intent is that this court should apply a *de novo* standard of review in determining whether sufficient evidence was presented to overcome the rebuttable presumption in favor of LDNR's plan, as well as in deciding which of the two available options is appropriate. In my view, the legislature's specific provision for a *de novo* standard of review on appeal is a clear indication this court is not "constrained" to affirm the trial court's judgment by deferring to its determinations.